Michael R. Reese (State Bar No. 206773)
*mreese@reeserichman.com*
Kim E. Richman (*pro hac vice* to be filed)
*krichman@reeserichman.com*
**REESE RICHMAN LLP**
875 Avenue of the Americas, 18th Floor
New York, New York  10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| KARISA NGUYEN, on behalf of herself and all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>MEDORA HOLDINGS, LLC,<br><br>  Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Karisa Nguyen ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her undersigned counsel, alleges the following based upon her own personal knowledge and the investigation of her counsel. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a proposed class action against Medora Holdings, LLC ("Defendant") for misleading consumers about the characteristics, qualities, and nature of its popped corn chip products sold under the "Popcorners" brand name by labeling the products "ALL NATURAL."

2. Namely, the products at issue are the following:

- Popcorners Popped Corn Chips Butter;
- Popcorners Popped Corn Chips White Cheddar;
- Popcorners Popped Corn Chips Kettle;
- Popcorners Popped Corn Chips Cheesy Jalapeño;
- Popcorners Popped Corn Chips Sea Salt;
- Popcorners Popped Corn Chips Caramel;

and other similar varieties ("Popcorners," the "Product," or the "Products").[1]

3. During a period of time from January 14, 2009, to the conclusion of this action (the "Class Period"), Defendant engaged and continues to engage in a widespread marketing campaign on the Product packaging, website, and advertisements to mislead consumers about the characteristics, qualities, and nature of Popcorners and their ingredients. Specifically, Defendant prominently placed the label "ALL NATURAL" on the Product packaging,[2] even though Defendant knew such statement was false and misleading. Defendant further states on the Product

---

1. Defendant may discontinue offering some products and regularly introduces new products that are also falsely and misleadingly labeled "ALL NATURAL." Defendant may also market and sell additional substantially similar products of which Plaintiff is unaware. Plaintiff will ascertain the identity of these additional products through discovery.

2. *E.g.*, Butter - Classic Flavor - Popcorners, http://www.popcorners.com/flavors/butter/ (last visited Feb. 10, 2014).

website that Popcorners are "ALL NATURAL."[3]

4.   Unfortunately for consumers and their children, Popcorners are not "ALL NATURAL."  Rather, the Products contain unnatural, genetically-modified plants (a/k/a genetically-modified organisms, or "GMOs").[4]

5.   Testing by an independent lab hired by Plaintiff's counsel has confirmed that Popcorners contain GMO ingredients.  Specifically, the Product's ingredients were found to have been unnaturally altered.  Attached hereto as **Exhibit 1** and incorporated by reference herein is a copy of the independent lab's test results.

6.   Through its deceptive practice of marketing and selling the Products as "ALL NATURAL" despite the presence of GMOs, Defendant was able to command a premium price for the Products.  Defendant was motivated to mislead consumers for no other reason than to take away market share from competing products, thereby increasing its own profits.

7.   Research shows that a majority of consumers expect "natural" foods to be free of GMOs.[5]

8.    Research also shows that many consumers consider the absence of GMOs from food to be important.[6]

---

3.   *E.g.*, *id.*

4.   As used herein, "genetically-modified" or "GMOs" refers to the use of molecular biology techniques, such as recombinant DNA techniques, to delete genes or to transfer genes for particular qualities from one species to another.  In contrast to conventional breeding techniques, modern molecular biology techniques permit the insertion into an organism of genetic material from an unrelated species, as the DNA of a fish into a tomato.  *See* Ed Wallis, *Fish Genes into Tomatoes: How the World Regulates Genetically Modified Foods*, 80 N.D. L. Rev. 421 (2004).

5.   *See* Cornucopia Institute, *Cereal Crimes: How "Natural" Claims Deceive Consumers and Undermine the Organic Label – A Look Down the Cereal and Granola Aisle*, at 29 (2011), *available at* http://www.cornucopia.org/2011/10/natural-vs-organic-cereal/ ("Cornucopia Cereal Report"); The Hartman Group, *Beyond Organic and Natural* (2010), *available at* http://www.hartman-group.com/publications/reports/beyond-organic-and-natural ("Beyond Organic Report").

6.   *See* Cornucopia Cereal Report at 29; *see also* Beyond Organic Report at 4 (showing that a significant percentage of consumers consider "GMO-free" to be an "important" or "very important" claim on food packaging or menus).

9. "Unnatural" is a defining characteristic of GMO foods. For example, the Monsanto Company, an agricultural company that pioneered GMO seeds, defines GMOs as "[p]lants or animals that have had their **genetic makeup altered to exhibit traits that are not naturally theirs.** In general, genes are taken (copied) from one organism that shows a desired trait and transferred into the genetic code of another organism."[7]  Additionally, the World Health Organization defines GMOs as "organisms in which the genetic material (DNA) has been **altered in a way that does not occur naturally**. It allows selected individual genes to be transferred from one organism into another, also between non-related species."[8]

10. Because Popcorners contain GMOs, Defendant's claims that the Products are "ALL NATURAL" are false, misleading, and designed to deceive consumers into purchasing the Products. Plaintiff brings this action to stop Defendant's misleading practice.

## JURISDICTION AND VENUE

11. This court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005), under 28 U.S.C. § 1332(d), which explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from the State of citizenship of any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges there are at least 100 members in the proposed Class (as defined below), the total claims of the proposed Class members are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, and a member of the proposed Class is a citizen of a State different from the State of citizenship of Defendant.

12. This Court has personal jurisdiction over Defendant for reasons including but not

---

7. Monsanto | Glossary, http://www.monsanto.com/newsviews/Pages/glossary.aspx#g (last visited Feb. 10, 2014) (emphasis added).

8. *See* WHO | 20 questions on genetically modified foods, http://www.who.int/foodsafety/publications/biotech/20questions/en/ (last visited Feb. 10, 2014) (emphasis added).

1  limited to the following: Plaintiffs' claims arise out of Defendant's conduct within the State of California.

2  13. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including Defendant's dissemination of false information regarding the quality of the Products.

**Intradistrict Assignment**

14. Assignment to the San Jose Division is appropriate under Civil L.R. 3-2(c) and (e) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Santa Clara County, including Plaintiff's purchase of a falsely and misleadingly labeled bag of Popcorners.

## PARTIES

**Plaintiff Karisa Nguyen**

15. Plaintiff Karisa Nguyen is a citizen domiciled in Santa Clara, California.

16. Ms. Nguyen bought a bag of Popcorners at a local supermarket in California during the Class Period, prior to the commencement of this action.

17. In purchasing the Product, Ms. Nguyen relied upon the statement that the Product was "ALL NATURAL" in deciding to purchase the Product. Had Ms. Nguyen known at the time that the Product was not, in fact, "ALL NATURAL" but was, instead, made with GMOs, she would not have purchased the Product.

18. If Ms. Nguyen knew that the Product labels were truthful and not misleading, she would continue to purchase the Products in the future. At present, however, Ms. Nguyen cannot be confident that the labeling of the Products is, and will be, truthful and non-misleading.

**Defendant Medora Holdings, LLC**

19. Defendant Medora Holdings, LLC, is a limited liability company formed under the laws of the State of New York.

20. Defendant Medora Holdings, LLC's principal place of business is in Middleton,

New York.

21. Medora Holdings, LLC, was known as Medora Snacks, LLC, until April 29, 2013.[9]

22. Defendant markets its Products to consumers and sells its Products to distributors throughout the United States.

## SUBSTANTIVE ALLEGATIONS

23. Defendant sells numerous varities of popped corn chips under the "Popcorners" brand that are widely consumed by both children and adults. Each variety of Popcorners popped corn chips is sold with a label on the front of the bag that states prominently "ALL NATURAL."[10] Defendant's website further states that Popcorners are "ALL NATURAL."[11] Consequently, all purchasers of the Products are exposed to Defendant's false and misleading "ALL NATURAL" representation.

24. Additionally, Defendant systematically conveys the "ALL NATURAL" misrepresentation in advertising and on social media websites, such as Facebook.

25. The back of the Popcorners bags also features the following representation to induce the purchaser into believing the Product is all natural (emphasis in original):

- POPCORNERS ARE THE *delicious* NEW SNACK WITH THE SNAP OF A CHIP AND THE SAME WHOLESOME GOODNESS AS POPCORN. THEY'RE *air popped* WITH REAL CORN AND *all natural ingredients* SO YOU CAN SNACK SMART.

26. A study conducted by the Rudd Center for Food Policy and Obesity at Yale University found that specific nutrition-related health claims on food products cause parents to believe those products are healthier than other products and to be more willing to purchase

---

9. NYS Department of State, Division of Corporations, Entity Information, http://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_INFORMATION?p_nameid=3625573&p_corpid=3614350&p_entity_name=medora&p_name_type=%25&p_search_type=BEGINS&p_srch_results_page=0 (last visited Feb. 10, 2014).

10. *E.g.*, Butter - Classic Flavor - Popcorners, http://www.popcorners.com/flavors/butter/.

11. *E.g.*, *id.*

products with such claims.[12]

27.   GMOs have created controversy around the world due to concerns about food safety, the effect on natural ecosystems, gene flow (a/k/a "gene migration" or "genetic drift") into non-GMO crops, and other issues.  One consumer response to such concerns has been to purchase products represented as "natural" rather than food products that are derived from GMOs.

28.   A product that is derived from GMOs is unnatural by definition.  In accordance with expert definitions, consumers reasonably view GMOs as unnatural.

29.   Natural breeding can take place only between closely related life forms—*e.g.*, wheat plants with other wheat plants.  Natural breeding techniques cannot add the genes of a different organism—*e.g.*, adding fish genes to wheat plants.  Instead, to add genes of an organism to a different organism, scientists must use genetic engineering, producing an organism that could not otherwise exist in nature.

30.   An independent lab confirmed that the genetically modified ingredients in Popcorners contain genes of a virus (cauliflower mosaic virus, or CaMV) and bacteria (*Agrobacterium tumefaciens*).

31.   Naturally existing plants could never obtain the genes of a virus or of bacteria, just as a cat could never have the genes of a fish.  Such breeding is unnatural.

32.   The viral and bacterial genes were added to the ingredients in Popcorners so that other foreign genes would be activated.  The source of these other genes is still being ascertained and may come from bacteria, viruses, insects, or animals.  In the past, corn has been engineered with mouse genes, jellyfish genes, hepatitis virus genes, rabies virus genes, chicken genes, and even human genes.[13]   Reasonable consumers would agree that such genetically modified

---

12.   *See* Karen N. Peart, *Parents Often Misled by Health Claims on Children's Cereal Packages*, Yale News (Aug. 10, 2011), *availalble at* http://opac.yale.edu/news/article.aspx?id=8782 (last visited Feb. 10, 2014).

13.   *See, e.g.*, USDA APHIS Permit Nos. 98-117-01r (corn genetically engineered to express human hemoglobin protein chains); 98-117-02r (human procollagen type chain protein); 98-117-03r (human serum albumin protein); 98-117-04r (rabies virus G glycoprotein); Nat. Biotech. 18: 670-674 (chicken gene).

ingredients are unnatural. For example, scientists have genetically engineered corn with jellyfish genes so the corn would glow in the dark. Reasonable consumers would believe that glow-in-the-dark corn is not natural corn, but artificial or man-made corn.

33. Genetically-modified ingredients are fundamentally different from naturally existing ingredients. Inserting foreign genes will alter even the original genes, just as inserting a new letter can alter the meaning of a word. The foreign genes will reduce or increase the natural gene's function, sometimes blocking the natural gene's expression altogether. These unexpected consequences can yield alterations in the nutritional content of the food, toxic and allergenic effects, poor crop performance, and generations of environmental damage.

34. Despite knowing that GMOs are not natural and that its Products contain GMOs, Defendant has engaged in a widespread marketing and advertising campaign to portray the Products as being "ALL NATURAL" and free of GMOs. Defendant engaged in this misleading and deceptive campaign to charge a premium for the Products and to take away market share from other similar products.

35. Research shows that products purported to be "natural," such as Popcorners, are often priced higher than equivalent products, suggesting that companies, including Defendant, are taking advantage of consumer confusion between certified organic labels and the often-deceptive "ALL NATURAL" label.[14]

36. As detailed herein, Defendant's widespread marketing campaign portraying the Products as "ALL NATURAL" misleads and deceives consumers because the Products are made with unnatural GMO ingredients (which have been verified by independent testing) and Defendant's marketing and other materials do not disclose this fact.

## CLASS ALLEGATIONS

37. Pursuant to Federal Rule of Civil Procedure ("Rule") 23(a) and (b)(2), Plaintiff brings this action on behalf of herself and on behalf of a nationwide class (the "Nationwide (b)(2)

---

14.   *See* Cornucopia Cereal Report.

Class"), defined as follows:

> All persons who purchased one or more of Defendant's Products in the United States and its territories during the Class Period

38. Additionally, pursuant to Rule 23(a) and (b)(3), Plaintiff brings this action on behalf of herself and on behalf of a nationwide class (the "Nationwide (b)(3) Class"),[15] defined as follows:

> All persons who purchased one or more of Defendant's Products in the United States and its territories during the Class Period.

39. Excluded from the Class are officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, or assigns, and any entity in which any of the foregoing has or has had had a controlling interest.

40. Plaintiff reserves the right to revise the Class definitions based on facts learned in the course of litigating this matter.

41. At this time, Plaintiff does not know the exact number of the Class members; however, given the nature of the claims and the number of retail stores selling Defendant's Products nationally, Plaintiff believes that the Class members are so numerous that joinder of all members is impracticable.

42. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

   a. Whether Defendant labeled, marketed, advertised, and/or sold the Products to Plaintiff and the Class members using false or misleading representations, including representations concerning the characteristics, qualities, or nature of the Products or their ingredients;

   b. Whether Defendant omitted and/or misrepresented material facts in connection with the sales of the Products;

---

15. This Class Action Complaint refers to the Nationwide (b)(2) Class and the Nationwide (b)(3) Class, together, as the "Class" or the "Classes."

      c.    Whether Defendant participated in and pursued the common course of conduct complained of herein; and

      d.    Whether Defendant's labeling, marketing, advertising, and/or selling of the Products as "ALL NATURAL" constitutes a deceptive consumer sales practice.

43.    Plaintiff's claims are typical of those of the Class members because Plaintiff, like all members of the Class, purchased Defendant's Products at a premium in a typical consumer setting and sustained damages from Defendant's wrongful conduct.

44.    Plaintiff will adequately protect the interests of the Class members.  Plaintiff has retained counsel that is experienced in litigating complex class actions.  Neither Plaintiff nor her counsel have any interests adverse to those of the other Class members.

45.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

46.    The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

47.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not.  Additionally, individual actions may be dispositive of the interests of all members of the Class, although certain Class members are not parties to such actions.

48.    Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.  As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

# CAUSES OF ACTION

## COUNT I
### (Violation of the Consumers Legal Remedies Act, Civ. Code § 1750 *et seq.*)
### (By Plaintiff, on Behalf of Herself and the Class)

49. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

50. Plaintiff brings this claim on behalf of herself and on behalf of the Class members, pursuant to the Consumers Legal Remedies Act, Civ. Code § 1750 *et seq.* (the "CLRA").

51. This claim seeks monetary damages and injunctive relief pursuant to Civil Code section 1782.

52. On or about January 14, 2013, Plaintiff sent Defendant a Notice and Demand Letter, notifying Defendant of its violations of the CLRA. Defendant did not correct the misrepresentations identified in the demand letter.

53. Plaintiff and the other members of the Class are "consumers," as Civil Code section 1761(d) defines that term, because they bought Popcorners for personal, family, or household purposes.

54. Plaintiff, the other members of the Class, and Defendant have engaged in "transactions," as Civil Code section 1761(e) defines that term.

55. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for purposes of the CLRA, and Defendant engaged in the conduct in transactions intended to result in, and which did result in, the sale of goods to consumers.

56. As alleged more fully above, Defendant violated, and continues to violate, the CLRA by falsely representing to Plaintiff and the other Class members the characteristics, qualities, and nature of the Products.

57. Defendant's above-mentioned conduct violated, and continues to violate, Civil Code section 1770(a)(5), (a)(7), and (a)(9).

58. Pursuant to Civil Code section 1780(a)(2) and (a)(5), Plaintiff seeks an Order of this

1  Court that includes, but is not limited to, an Order enjoining Defendant from using language on the
2  Products' packaging or advertising representing Popcorners as "ALL NATURAL" and/or "natural"
3  or, alternatively, an Order prohibiting the presence of GMOs in the Products.

4      59. Plaintiff and the other members of the Class may be irreparably harmed and/or
5  denied an effective and complete remedy if the Court does not issue such an Order.

6      60. The unfair and deceptive acts and practices of Defendant described above present a
7  serious threat to Plaintiff and members of the Class.

8      61. Therefore, Plaintiff prays for relief as set forth below.

**COUNT II**
**(Violation of the Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq*.)**
**(Unlawful Business Acts and Practices)**
**(By Plaintiff, on Behalf of Herself and the Class)**

12      62. Plaintiff repeats each and every allegation contained in the paragraphs above and
13  incorporates such allegations by reference herein.

14      63. Plaintiff brings this claim on behalf of herself and the Class members, pursuant to
15  the "unlawful business acts and practices prong" of the Unfair Competition Law, Bus. & Prof.
16  Code § 17200 *et seq.* (the "UCL").

17      64. The acts of Defendant described above, and each of them, constitute unlawful
18  business acts and practices.

19      65. In this regard, Defendant's manufacturing, marketing, advertising, packaging,
20  labeling, distributing, and selling of Popcorners violates the Sherman Food, Drug and Cosmetics
21  Law, Health & Safety Code § 109875 *et seq*. (the "Sherman Law").

22      66. In relevant part, the Sherman Law declares that a food is misbranded if its labeling
23  is false or misleading in any particular and further provides that it is unlawful for any person to
24  misbrand any food. Health & Saf. Code §§ 110660, 110765.

25      67. The Sherman Law defines a "person" as "any individual, firm, partnership, trust,
26  corporation, limited liability company, company, estate, public or private institution, association,
27  organization, group, city, county, city and county, political subdivision of this state, other
28  governmental agency within the state, and any representative, agent, or agency of any of the

foregoing." Health & Saf. Code § 109995.

68. Defendant is a limited liability company and, consequently, a "person" within the meaning of the Sherman Law.

69. The business practices alleged above are unlawful the UCL by virtue of violating the CLRA, which forbids deceptive advertising, as discussed above.

70. The business practices alleged above are unlawful under the UCL by virtue of violating the False Advertising Law, Bus. & Prof. Code § 17500 *et seq.* (the "FAL"), which forbids untrue advertising and misleading advertising, as discussed below.

71. As a result of the business practices described herein, Plaintiff and the other Class members, pursuant to Business and Professions Code section 17203, seek an Order enjoining such future conduct on the part of Defendant and such other Orders and Judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for Popcorners as a result of Defendant's wrongful conduct.

72. The above-described unlawful business acts and practices of Defendant present a threat and reasonable likelihood of deception to Plaintiff and the other members of the Class in that Defendant has systematically perpetrated and continues to perpetrate such acts or practices upon members of the Class by means of its misleading manufacturing, marketing, advertising, packaging, labeling, distributing, and selling of Popcorners.

73. Therefore, Plaintiff prays for relief as set forth below.

**COUNT III**
**(Violation of the Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq*.)**
**(Fraudulent Business Acts and Practices)**
**(By Plaintiff, on Behalf of Herself and the Class)**

74. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

75. Plaintiff brings this claim on behalf of herself and on behalf of the Class members, pursuant to the "fraudulent business acts and practices" prong of the UCL.

76. The acts of Defendant described above constitute fraudulent business practices under the UCL.

77. As more fully described above, Defendant's misleading marketing, advertising, packaging, and labeling of Popcorners is likely to deceive reasonable consumers. Indeed, Plaintiff and the other members of the Class were deceived regarding the characteristics, qualities, and nature of Defendant's Products, since Defendant's marketing, advertising, packaging, and labeling of Popcorners misrepresents and/or omits the true nature of the Products. Defendant's portrayal of its Products as "ALL NATURAL" is misleading and deceptive because the Products contain unnatural GMOs.

78. This fraud and deception caused Plaintiff and the other members of the Class to purchase more of Defendant's Popcorners than they would have or to pay more than they would have for the Products had they known the statements on the front of Defendant's Products conveying that they are "ALL NATURAL" are false and misleading, since the Products contain GMO ingredients.

79. Plaintiff and the other Class members, pursuant to Business and Professions Code section 17203, seek an Order enjoining such future conduct on the part of Defendant and such other Orders and Judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of Defendant's wrongful conduct.

80. Therefore, Plaintiff prays for relief as set forth below.

**COUNT IV**
**(Violation of the False Advertising Law, Bus. & Prof. Code § 17500 *et seq*.)**
**(By Plaintiff, on Behalf of Herself and the Class)**

81. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

82. Plaintiff brings this claim on behalf of herself and on behalf of the Class members, pursuant to the FAL.

83. At all material times, Defendant engaged in a scheme of offering its Products for sale to Plaintiff and other members of the Class by way of, *inter alia*, commercial marketing and advertising, the World Wide Web (Internet), product packaging and labeling, and other promotional materials. Defendant's portrayal of its Products as "ALL NATURAL" is false and

1  misleading because the Products contain unnatural GMO ingredients. Defendant made the advertisements and inducements at issue within the State of California, and the advertisements and inducements at issue fall within the FAL's definition of "advertising" in that: (i) Defendant intended them as inducements to purchase Popcorners; (ii) they are statements Defendant disseminated to Plaintiff and the Class members; and (iii) Defendant intended them to reach the members of the Class. Defendant knew, or in the exercise of reasonable care should have known, that the statements at issue were false and misleading.

84. In furtherance of the above-described plan and scheme, Defendant has prepared and distributed within the State of California—via commercial marketing and advertising, the World Wide Web (Internet), product packaging and labeling, and other promotional materials—statements that falsely and misleadingly represent the Products as "ALL NATURAL." Reasonable consumers, including Plaintiff, necessarily and reasonably relied on these materials concerning Popcorners. Reasonable consumers, including Plaintiff and the other Class members, were among the intended targets of such representations.

85. The above acts of Defendant, in disseminating said false and misleading statements throughout the State of California to consumers, including Plaintiff and the other members of the Class, were and are likely to deceive reasonable consumers, including Plaintiff and the other members of the Class, by obfuscating the nature or quality of the ingredients contained in the Products, all in violation of the FAL.

86. As a result of the above violations of the FAL, Defendant has been unjustly enriched at the expense of Plaintiff and the other members of the Class. Plaintiff and the Class members, pursuant to Business and Professions Code section 17535, seek an Order of this Court enjoining such future conduct on the part of Defendant, and such other Orders and Judgments that may be necessary to disgorge Defendant's ill-gotten gains and restore to any person in interest any money paid for Popcorners as a result of the wrongful conduct of Defendant.

87. Therefore, Plaintiff prays for relief as set forth below.

**COUNT V**
**(Breach of Express Warranty, Com. Code § 2313)**
**(By Plaintiff, on Behalf of Herself and the Class)**

88. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

89. Plaintiff brings this claim for breach of express warranty on behalf of herself and on behalf of the Class members, pursuant to Commercial Code section 2313.

90. Plaintiff and the Class members each formed a contract with Defendant at the time they purchased the Products. The terms of the contract include the promises and affirmations of fact Defendant made on the Products' packaging and through marketing and advertising, including Defendant's promise that the Products are "ALL NATURAL," as described above. The marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contracts between Plaintiff and the Class members, on the one hand, and Defendant, on the other.

91. In addition or in the alternative to the formation of an express contract, Defendant made each of its above-described representations to induce Plaintiff and the Class members to rely on such representations, and they each did so rely (and should be presumed to have relied) on Defendant's "ALL NATURAL" representation as a material factor in their decision(s) to purchase the Products.

92. All conditions precedent to Defendant's liability under these contracts have been performed by Plaintiff and the Class members when they purchased the Products for their ordinary purposes.

93. On January 14, 2013, Plaintiff sent Defendant a letter and contemplated draft Class Action Complaint notifying it of its violation of the law of the State of California, including breach of express warranty. Defendant did not correct the misrepresentations identified in the letter.

94. At all times relevant to this action, Defendant has breached its express warranties about the Products because the Products are not "ALL NATURAL," since they contain GMOs, in violation of Commercial Code section 2313.

95. As a result of Defendant's breaches of its express warranties, Plaintiff and the Class

members were damaged in the amount of the purchase price they paid for the Products, in an aggregate amount to be proven at trial.

96.  Therefore, Plaintiff prays for relief as set forth below.

### COUNT VI
**(Breach of the Implied Warranty of Merchantability)**
**(By Plaintiff, on Behalf of Herself and the Class)**

97.  Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

98.  Plaintiff brings this claim for breach of the implied warranty of merchantability on behalf of herself and on behalf of the Class members.

99.  Plaintiff and the other Class members purchased Defendant's Products, which were promoted, marketed, advertised, packaged, and labeled as "ALL NATURAL." Pursuant to these sales, Defendant impliedly warranted that Popcorners would be merchantable and fit for the ordinary purposes for which such goods are used and conform to the promises or affirmations of fact made in the Products' promotions, marketing, advertising, packaging, and labels. As a result, Plaintiff and the other Class members relied on Defendant's representations that Popcorners were "ALL NATURAL," and, at or about that time, Defendant sold its Products to Plaintiff and the other Class members. By Defendant's promotion, marketing, advertising, packaging, and labeling of Popcorners, Defendant warranted that its Products are "ALL NATURAL" and have particular characteristics and qualities as set forth above. Plaintiff and the other Class members bought Popcorners, relying on its representations that its Products were "ALL NATURAL", when, in fact, they are not "ALL NATURAL," in that they contain GMO ingredients, and, thus, they do not conform to Defendant's warranties.

100.  Defendant breached the warranty implied at the time of sale in that Plaintiff and the other Class members did not receive goods that were "ALL NATURAL" and, thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, advertised, packaged, labeled, or sold.

101.  As a proximate result of this breach of implied warranty by Defendant, Plaintiff and the other Class members have suffered damages in an amount to be determined at trial, since,

among other things, they purchased and paid a premium for Popcorners Products that did not conform to what Defendant promised via promotion, marketing, advertising, packaging, and labeling, and they were deprived of the benefit of their bargain and spent money on Products that did not have any value or have less value than warranted or Products that they would not have purchased at a premium price and used had they known the true facts about them.

102. Therefore, Plaintiff prays for relief as set forth below.

## COUNT VII
### (Restitution / Unjust Enrichment)
### (By Plaintiff, on Behalf of Herself and the Class)
### (In the Alternative)

103. Plaintiff realleges and incorporates the above paragraphs of this class action Complaint as if set forth herein.

104. Plaintiff brings this claim for restitution on behalf of herself and on behalf of the Class members, in the alternative to all of the claims identified above.

105. As a result of Defendant's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of Popcorners, Defendant was unjustly enriched at the expense of Plaintiff and the Class members, through the payment of the purchase price for the Products.

106. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff the other members of the Class, in light of the fact that the Products purchased by Plaintiff and the other members of the Class were not the "ALL NATURAL" Products Defendant purported them to be. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the other members of the Class for the monies paid to Defendant for such Products.

107. Therefore, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff seeks judgment as follows:

A. For an Order certifying the proposed Class herein under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3); appointing Plaintiff as representative of the Class; and appointing her undersigned counsel as Class counsel;

B. For a Declaration that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C. For an award of restitution pursuant to Business and Professional Code sections 17203 and 17535;

D. For an award of disgorgement pursuant to Business and Professional Code sections 17203 and 17535;

E. For an Order enjoining Defendant's unlawful and deceptive acts and practices pursuant to Business and Professional Code sections 17203 and 17535.

F. For monetary and injunctive relief pursuant to Civil Code section 1780;

G. Monetary damages, including, but not limited to any compensatory, incidental, or consequential damages in an amount to be determined at trial, together with prejudgment interest at the maximum rate allowable by law with respect to the common law claims alleged;

H. Statutory damages in the maximum amount provided by law;

I. Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

J. For an Order awarding Plaintiff and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

K. For any further relief that the Court may deem appropriate.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury for all claims so triable.

Dated: February 10, 2014                    Respectfully submitted,

**REESE RICHMAN LLP**

By: */s/ Michael R. Reese*
Michael R. Reese (State Bar No. 206773)
*mreese@reeserichman.com*
Kim E. Richman (*pro hac vice* to be filed)
*krichman@reeserichman.com*
875 Avenue of the Americas, 18th Floor
New York, New York  10001

Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiff and the Proposed Class*