ROBERT L. WALLAN #126480
robert.wallan@pillsburylaw.com
ALYSON PARKER #270660
alyson.parker@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA  90017-5406
Telephone: (213) 488-7100
Facsimile: (213) 629-1033
Attorneys for Defendant
Medora Holdings, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KARISA NGUYEN, ANDRE VANDENBERG and PEARLINE BLACKWOOD, on behalf of themselves and others similarly situated, | ) Consolidated Case No. 5:14-CV-618-PSG )<br>) **CLASS ACTION**<br>)<br>) DEFENDANT'S OPPOSITION TO<br>) MOTION FOR CLASS CERTIFICATION |
| Plaintiffs, | )<br>) |
| vs. | )<br>) CrtRm.: 5, 4th Floor |
| MEDORA HOLDINGS, LLC, | ) Judge:  Hon. Paul S. Grewal<br>) Date:  May 12, 2015 |
| Defendant. | ) Time:  1:30 p.m.<br>) |

Defendant Medora Holdings, LLC ("Medora") respectfully submits its Opposition

to the Motion for Class Certification submitted by Plaintiffs in this action.

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ...........................................................................................1

II.     BACKGROUND ............................................................................................2

   A.   Popcorners and the 2013 Label Change. ............................................2

   B.   Plaintiffs Pursue Litigation Despite Label Change. ............................3

   C.   The Amended Complaint. .....................................................................4

   D.   The Motion for Class Certification. .....................................................4

III.    ARGUMENT .................................................................................................5

   A.   This Court Should Deny Class Certification Because Plaintiffs Lack
        Article III Standing to Bring This Motion. ..........................................5

        1.   Plaintiffs Have Not Been Injured. .............................................5

        2.   Plaintiffs Are Not "Imminently Threatened" With an Injury Because
             Medora Removed the Challenged Label in 2013. .....................6

        3.   Plaintiffs Are Not "Imminently Threatened With Injury" Because
             They Have No Plans to Purchase Popcorners in the Future. ..........7

        4.   Plaintiffs' Alleged Injuries Are Not Traceable to the Challenged
             Label. ..........................................................................................8

        5.   Injunctive Relief Will Not Redress Plaintiffs' Alleged Injuries. .................9

        6.   Corrective Advertising Will Not Redress Plaintiffs' Alleged Injuries. ........10

   B.   This Court Should Deny Class Certification Because the Proposed Class
        Is Not Ascertainable. .........................................................................11

   C.   This Court Should Deny Class Certification Because the Named
        Plaintiffs Are Not Typical. .................................................................14

   D.   This Court Should Deny Issue-Only Class Certification Because
        Plaintiffs' 23(c)(4) Theory Is an Attempt to Evade the Predominance
        Requirement of a Damages Class. ......................................................15

        1.   Plaintiffs Must Prove Predominance of Damages to Certify a
             Liability-Only Issue Class. ......................................................16

2.   Plaintiffs' Failure to Even Attempt to Establish the Predominance of Damages in Their Motion Precludes Class Certification. ...........................17

3.   Because the Issue of Whether Consumers Relied on "All Natural" Varies From Consumer to Consumer, It Does Not Predominate. ................19

4.   Plaintiffs' Issue Certification Cases Have No Application Here. ...............21

E.   This Court Should Deny Class Certification Because Plaintiffs' Motion Suffers From Other Insurmountable Defects. ....................................................22

1.   California Plaintiff Nguyen Cannot Certify a Nationwide Class Alleging Violations of the CLRA, UCL, and FAL. ....................................22

2.   Florida Plaintiff Vandenberg Cannot Certify a Nationwide Class Alleging Violations of the FDUTPA. ............................................................23

3.   A Privity Defense Destroy the Plaintiffs' Standing to Bring a Claim for the Breach of the Implied Warranty of Merchantability........................23

4.   The Magnusson-Moss Warranty Act Is Inapplicable Because the Class Does Not Have One Hundred Named Plaintiffs. ...............................24

IV.   CONCLUSION ........................................................................................................24

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS
CERTIFICATION
Case No. 5:14-CV-618-PSG

# TABLE OF AUTHORITIES

Page

## Cases

*Algarin v. Maybelline, LLC,*
  300 F.R.D. 444 (S.D. Cal 2014) .................................................................................. 11

*Allee v. Medrano,*
  416 U.S. 802 (1974) ...................................................................................................... 7

*Am. Fed'n of Gov't Emps., AFL-CIO v. Brown,*
  866 F. Supp. 16 (D.D.C. 1994) ..................................................................................... 7

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) .................................................................................................... 19

*Anderson v. United States,*
  612 F.2d 1112 (9th Cir. 1979) ...................................................................................... 9

*Astiana v. Ben & Jerry's Homemade, Inc.,*
  No. C-10-4387-PJH, 2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ....................... 11, 17, 19

*Astiana v. Kashi Co.,*
  291 F.R.D. 493 (S.D. Cal. 2013) ............................................................................. 19, 20

*Bailey v. Monaco Coach Corp.,*
  168 F. App'x 893 (11th Cir. 2006) .............................................................................. 23

*Bates v. United Parcel Serv., Inc.,*
  511 F.3d 974 (9th Cir. 2007) ........................................................................................ 5

*Bird v. First Alert, Inc.,*
  No. C 14-3585 PJH, 2014 WL 7248734 (N.D. Cal. Dec. 19, 2014) .............................. 7

*Brazil v. Dole Packaged Foods, LLC,*
  No. 12-CV-01831-LHK, 2014 WL 2466559 (N.D. Cal. May 30, 2014)
  (appeal dismissed on Nov. 17, 2014) (damages class subsequently
  decertified by *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-
  LHK, 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014)) ................................................... 22

*Bruton v. Gerber Prods. Co.,*
  No. 12-CV-02412-LHK, 2014 WL 2860995 (N.D. Cal. June 23, 2014) ...................... 14

*Burndy Corp. v. Teledyne Indus., Inc.,*
  748 F.2d 772 (2d Cir. 1984) ....................................................................................... 10

*Butler v. Sears, Roebuck & Co.,*
  727 F.3d 796 (7th Cir. 2013) ...................................................................................... 21

*Cohen v. Implant Innovations, Inc.,*
   259 F.R.D. 617 (S.D. Fla. 2008) ................................................................. 23

*Comcast Corp. v. Behrend,*
   133 S. Ct. 1426 (2013) ............................................................... 14, 16, 17

*Contessa Food Prods, Inc. v. Lockpur Fish Processing Co., Ltd.,*
   No. CV98-8218NMSHX, 2003 WL 25778704 (C.D. Cal. Jan. 29, 2003) ..................... 6

*Daicakis v. Comcast Corp.,*
   No. C 11-3002 SBA, 2013 WL 1878921 (N.D. Cal. May 3, 2013) .............................. 11

*Delarosa v. Boiron, Inc.,*
   No. SA-CV-10-1569-JST CWX, 2012 WL 8716658, at *4 (C.D. Cal.
   Dec. 28, 2012) ......................................................................................... 8

*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970 (9th Cir. 2011) ..................................................................... 5

*Etuk v. Slattery,*
   936 F.2d 1433 (2d Cir. 1991) ..................................................................... 7

*Friends of the Earth, Inc. v. Laidlaw Env. Servs. (TOC), Inc.,*
   528 U.S. 167 (2000) ................................................................................ 7

*Garcia v. Kashi Co.,*
   No. 12-21678-CIV, 2014 WL 4392163 (S.D. Fla. Sept. 5, 2014) ........................... 23

*Gulino v. Bd. of Educ. of the City Sch. Dist. of N.Y.,*
   907 F. Supp. 2d 492 (S.D.N.Y. 2012) .......................................................... 7

*Gustavson v. Mars, Inc.,*
   No. 13-cv-04537-LHK, 2014 WL 6986421 (N.D. Cal. Dec. 10, 2014) ...................... 8

*Hanon v. Dataproducts Corp.,*
   976 F.2d 497 (9th Cir. 1992) ..................................................................... 14

*Hodes v. Van's Int'l Foods,*
   No. 09-01530 RGK, 2009 WL 2424214 (C.D. Cal. July 23, 2009) .......................... 12

*Hutson v. Rexall Sundown, Inc.,*
   837 So.2d 1090 (Fla. Dist. Ct. App. 2003) .................................................... 23

*In re ConAgra Foods, Inc.,*
   No. cv-11-05379-MMM, 2015 WL 1062756 (C.D. Cal. Feb. 23, 2015) ..................... 23

*In re POM Wonderful,*
   No. ML 10-02199 DDP, 2014 WL 1225184 (C.D. Cal. March 25, 2014) ........ 12, 17, 18

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    725 F.3d 244 (D.C. Cir. 2013)............................................................. 17

*In re Rhone-Poulenc Rorer, Inc.*,
    51 F.3d 1293 (7th Cir. 1995) ............................................................. 15

*In re Scotts EZ Seed Litig.*,
    No. 12-cv-4727-VB, 2015 WL 670162 (S.D.N.Y. Jan. 26, 2015)................. 6

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (Cal. 2009) .................................................... 19

*In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*,
    722 F.3d 838 (6th Cir. 2013) ............................................................. 21

*Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.*,
    348 F. Supp. 2d 165 (S.D.N.Y. 2004) ................................................ 10

*Jones v. ConAgra Foods*,
    No. C 12-1633-CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014)
    *appeal docketed*, No. 14-16327 (9th Cir. Nov. 21, 2014)......................... 7, 8

*Kearney v. Salomon Smith Barney*,
    39 Cal. 4th 95 (2006)...................................................................... 22

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (Cal. 2003) ............................................................ 19

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ........................................................... 20

*Lilly v. Jamba Juice Co.*,
    No. 13-CV-02998-JST, 2014 WL 4652283 (N.D. Cal. Sept. 18, 2014) ...... 16

*Linotype Co. v. Varityper, Inc.*,
    No. 89 Civ 4747 (MJL), 1989 WL 943385 (S.D.N.Y. Aug. 4, 1989)............ 10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................ 5

*Mazur v. eBay Inc.*,
    257 F.R.D. 563 (N.D. Cal. 2009) ...................................................... 11

*Mazza v. Honda Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ............................................................ 22

*Merck Eprova AG v. Gnosis S.P.A.*,
    No. 07 Civ. 5898 (RJS), 2013 WL 1385208 (S.D.N.Y. Mar. 7, 2013) ......... 10

*Montgomery v. New Piper Aircraft, Inc.,*
   209 F.R.D. 221 (S.D. Fla. 2002) ................................................................................. 23

*N.Y. Cmtys. For Change v. N.Y. City Dep't of Educ.,*
   No. 11 CV 3494 (SJ), 2012 WL 7807955 (E.D.N.Y. Aug. 29, 2012) ........................... 7

*N.Y. State NOW v. Terry,*
   159 F.3d 86 (2d Cir. 1998) ........................................................................................... 7

*Nat'l Geographic Soc'y v. Conde Nast Publ.,*
   687 F. Supp. 106 (S.D.N.Y. 1988) ......................................................................... 10, 11

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985) ..................................................................................................... 22

*Rahman v. Mott's LLP,*
   No. 13-cv-03482-SI, 2014 WL 5282106 (N.D. Cal. Oct. 15, 2014) ............. 7, 16, 17, 18

*Rebman v. Follett Higher Educ. Grp., Inc.,*
   248 F.R.D. 624 (M.D. Fla. 2008) ................................................................................. 23

*Red v. Kraft Foods, Inc.,*
   No CV-10-1028-GW, 2011 WL 4599833 (C.D. Cal. Sept. 29, 2011) ........................... 12

*Saavedra v. Eli Lilly & Co.,*
   No. 2:12-CV-9366-SVW, 2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ............... 16, 17

*Sanchez v. Wal-Mart Stores, Inc.,*
   No. 1514435, 2009 WL 1514435 (E.D. Cal. May 28, 2009) ....................................... 14

*Seidman v. Snack Factory, LLC,*
   No. 14-62547-civ-Cohn/Seltzer, (S.D. Fla. March 26, 2015) ....................................... 8

*Sethavanish v. ZonePerfect Nutrition Co.,*
   No. 12-2907-SC, 2014 WL 580696 (N.D. Cal. Feb. 13, 2014) ............................... 11, 13

*Stearns v. Ticketmaster Corp.,*
   655 F.3d 1013 (9th Cir. 2011) ................................................................................ 14, 19

*Sullivan v. Oracle Corp.,*
   662 F.3d 1265 (9th Cir. 2011) ..................................................................................... 22

*Thurston v. Bear Naked, Inc.,*
   No. 3:11-cv-02890-H (BGS), 2013 WL 5664985 (S.D. Cal. July 30,
   2013) ............................................................................................................................. 19

*United States v. Hays,*
   515 U.S. 737 (1995) ....................................................................................................... 5

*United States v. W.T. Grant Co.*,
    345 U.S. 629 (1953) ..................................................................................... 7, 9

*Weiner v. Snapple Beverage Corp.*,
    No. 07 CIV. 8742 DLC, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010).......................... 23

*Werdebaugh v. Blue Diamond Growers*,
    No. 12-cv-02724-LHK, 2014 WL 2191901 (N.D. Cal. Dec. 15, 2014)......................... 17

*Williams v. Oberon Media, Inc.*,
    468 Fed. Appx. 768 (9th Cir. 2012) ............................................................... 11

*Xavier v. Philip Morris USA Inc.*,
    787 F. Supp. 2d 1075 (N.D. Cal. 2011)........................................................... 11

<u>Constitution</u>

United States Constitution
    Amendment VII, Reexamination Clause........................................................ 15
    Article III ................................................................................... 5, 7, 8

<u>Statutes and Codes</u>

California Business & Professions Code
    Section 17200 *et seq.*.......................................................................... 4, 22
    Section 17500 *et seq.*.......................................................................... 4, 22

California Civil Code
    Section 1750 *et seq.* ........................................................................ 2, 4, 22

Florida Statutes
    Section 501.201 *et. seq.*....................................................................... 4, 23

New York General Business Law
    Section 349 ........................................................................................ 4

United States Code
    Title 15, Section 2310 (d)(3)(C) ............................................................... 4, 24

<u>Rules and Regulations</u>

Federal Regulations,
    Title 58, Section 2302 (Jan. 6, 1993)........................................................... 20
    Title 58, Section 2407 (Jan. 6, 1993)........................................................... 20

Federal Rules of Civil Procedure
    Rule 23(a) ................................................................................... 5, 11, 14
    Rule 23(a)(2) ................................................................................... 19
    Rule 23(b) ....................................................................................... 14
    Rule 23(b)(2) ................................................................................... 5, 9
    Rule 23(b)(3) ............................................................................ 5, 16, 19, 21

- vii -

Rule 23(c)(4) ................................................................................................. passim

## Other Authorities

Achenbach, Joel. *The War on Science; the Age of Disbelief*
    National Geographic (March, 2015) ............................................................ 20

*http://www.fda.gov/aboutfda/transparency/basics/ucm214868.htm* ...................................... 1

*http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm352067.htm* .............................. 1

*http://www.medicaldaily.com/americans-buy-organic-non-gmo-food-*
    *without-knowing-what-it-means-thanks-marketing-311644* ........................................... 20

https://www.youtube.com/watch?v=EzEr23XJwFY. ............................................................... 20

*See* David Newland, *Sorry Hipsters, That Organic Kale Is a Genetically
    Modified Food*
    Smithsonian.com, Sept. 10, 2014 ................................................................. 15

*See*, http://cornucopia.org/cereal-
    scorecard/docs/Cornucopia_Cereal_Report.pdf. ........................................... 13

## I.     INTRODUCTION

Plaintiffs Karisa Nguyen, Andre Vandenberg, and Pearline Blackwood ("Plaintiffs" or "Named Plaintiffs") seek injunctive relief, monetary damages, statutory damages, punitive damages, and attorneys' fees, because defendant Medora Holdings, LLC ("Medora") used to include the words "All Natural" on the label of its "Popcorners" snack food.  Plaintiffs contend that domestic corn grown from genetically modified seeds used in Popcorners corn-based chips is not "All Natural."  But the Food and Drug Administration has declined to regulate use of the term "All Natural;"[1] it has never restricted use of domestic corn for human consumption; and it estimates that almost ninety percent of domestic corn production is genetically modified.[2]  Still, Plaintiffs allege that this Court, via the class action mechanism, should punish Medora for failing to comply with what Plaintiffs would like food labeling laws to require.

Plaintiffs' motion to certify a class for injunctive relief, or in the alternative for Federal Rule of Civil Procedure ("Rule") 23(c)(4) issue certification (the "Motion"),[3] in this food labeling case should be denied for many reasons.  First, this Court has no subject matter jurisdiction to hear this matter because Named Plaintiffs have no standing to bring any claim or motion because: 1) they are neither injured nor imminently threatened with an injury; 2) their alleged injury is not traceable to Medora's conduct; and 3) neither injunctive relief nor corrective advertising will redress their alleged injuries.  Second, because the proposed class membership is overbroad and unmanageable, Plaintiffs have failed to show ascertainably of the proposed class.  Third, the Named Plaintiffs are not typical of the proposed class because each of their claims and factual allegations differs significantly from the others and they are all subject to unique defenses (including their lack of standing, as noted above.)  Fourth, Plaintiffs do not satisfy the requirements of certification under

---

[1] *See http://www.fda.gov/aboutfda/transparency/basics/ucm214868.htm.*

[2] *See http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm352067.htm.*

[3] *See* Plaintiffs' Motion for Class Certification (Dkt. 53-4; March 19, 2015) (the "Motion").

1    Rule 23(c)(4) because they do not, and do not try to, show predominance of damages issues.

2    Fifth, Plaintiffs plead several underlying claims that are inappropriate for class certification.

3    As such, Plaintiffs' Motion to certify a class must fail.

4    **II.      BACKGROUND**

5         **A.      Popcorners and the 2013 Label Change.**

6         Medora developed and first marketed a corn-based snack chip named Popcorners in

7    April, 2010 ("Popcorners").  The corn-based snack chip is a form of popcorn shaped as a

8    triangle.  It is made from domestic corn for the domestic market.  Declaration of Michael

9    Ruppel ("Ruppel Decl."), filed herewith, ¶12.  Apart from a very small amount of online

10   sales, Medora sold Popcorners to wholesalers and distributors for resale.  *Id.*[4]  Sales vary by

11   package size, as well as by case and pallet volume.  Starting from nothing, annual net sales

12   for Popcorners amounted to less than $450,000 in 2010.  Ruppel Decl., ¶5.  Net sales

13   increased to less than $6 million in 2011, $15 million in 2012, and $26 million in 2013.  *Id.*

14        In late July, 2013, one lawyer for Plaintiffs sent Medora a letter quoting the

15   California Consumers Legal Remedies Act ("CLRA"),[5] demanding that Medora cease

16   using the words "All Natural" on its packaging, and threatening to file a class action suit.

17   Ruppel Decl., ¶9.  In late October, 2013, another lawyer for Plaintiffs sent a draft complaint

18   along with a settlement demand, similarly demanding that Medora cease using the words

19   "All Natural" on its Popcorners packaging.  *Id.*  While Medora strongly denies there is

20   anything misleading about its old labeling, in October and November, 2013, Medora

21   decided to implement new packaging that deleted the words, "All Natural."  *Id.*, ¶¶6, 10.

22   The new packaging took effect in December, 2013.  *Id.*, ¶10.  Following the label change,

23   Popcorners' annual net sales increased to approximately $34 million in 2014.  *Id.*, ¶7.

24

25

---

26   [4]  Medora sells less than 0.2% of its product via online direct sales.  Medora manufactures
        and distributes other products, including a recently introduced non-GMO product made
27      from Brazilian non-genetically modified corn.  Ruppel Decl., ¶¶ 12, 13.

28   [5]  *See* Cal. Civ. Code §1750 *et seq.*

**B.      Plaintiffs Pursue Litigation Despite Label Change.**

Despite Medora's label change in late 2013, Plaintiff Nguyen filed her initial complaint in the Northern District of California in February, 2014.  Plaintiff Vandenberg followed suit by filing his complaint in the Southern District of Florida in August, 2014.  The Vandenberg action was subsequently transferred to the Northern District of California, and the two actions were related and later consolidated.[6]  Plaintiff Blackwood first joined the case via the operative Amended Class Action Complaint ("Amended Complaint").  (Dkt. 47; Feb. 26, 2015).

In her deposition, Plaintiff Nguyen testified that she purchased a few bags of Popcorners in 2013, but has not made any purchases since then.  Deposition of Karisa Nguyen ("Nguyen Depo."), attached to the Declaration of Robert Wallan ("Wallan Decl."), filed herewith, ¶4, and Exh. 1, 60:13-61:4.  She does not know the price she paid for the Popcorners she allegedly purchased.  *Id.,* 24:9-11.  Nguyen admitted that she suffered no financial damage as a result of her purchases.  *Id.*, 82:22-24.  She has no record of her purchases.  *Id.*, 24:9-23.  Plaintiff Vandenberg purchased a single bag of Popcorners in 2013, but has no record of that purchase.  Wallan Decl., ¶5 and Exh. 2 ("Vandenberg Depo."), 28:1-6, 28:14-16, 29:3-5.  He testified that he is now aware that most corn is genetically modified, but that he continues to eat corn-based foods that are probably genetically modified, regardless of whether they contain genetically modified ingredients.  *Id.*, 16:23-17:4, 38:7-12, 44:15-22.  Plaintiff Blackwood is lawyer who testified that the first time she tried Popcorners, she was on a flight and selected a free snack from a stewardess on a plane without reading the label.  Wallan Decl., ¶6 and Exh. 3 ("Blackwood Depo."), 19:19-21:23.  She also testified that she continued to purchase Popcorners during most of 2014, well after the label change removed the words "All Natural" from Popcorners

---

[6] Vandenberg's original case in the Southern District of Florida was entitled: *Vandenberg v. Medora Snacks, LLC,* No. 9:14-cv-81010.  Subsequently, the Parties transferred *Vandenberg* to this Court (No. cv-14-04692-PSG) and related it to *Medora* (Dkt. 30; Nov. 14, 2014); and subsequently this Court consolidated *Nguyen* and *Vandenberg* under the *Nguyen* case number.  (Dkt. 62; March 30, 2015).

1  packaging.  *Id.*, 53:20-54:8.[7]

2  **C.     The Amended Complaint.**

3  Plaintiffs' Amended Complaint identifies ten causes of action against Medora.

4  Plaintiffs allege that the old labeling on Popcorners constitutes: 1) a violation of the CLRA

5  on behalf of Nguyen and a nationwide class; 2) a violation of California's Unfair

6  Competition Law ("UCL")[8] for unlawful business acts on behalf of Nguyen and a

7  nationwide class; 3) a violation of the UCL for fraudulent business acts on behalf of

8  Nguyen and a nationwide class; 4) a violation of the False Advertising Law ("FAL")[9] on

9  behalf of Nguyen and a nationwide class; 5) a breach of express warranty on behalf of a

10  nationwide class; 6) a breach of the implied warranty of merchantability on behalf of a

11  nationwide class; 7) a violation of New York General Business Law Section 349 by

12  Blackwood on behalf of the New York Subclass; 8) a violation of the Florida Deceptive and

13  Unfair Trade Practices Act ("FDUPTA")[10] on behalf of Vandenberg and a nationwide class;

14  9) negligent misrepresentation on behalf of Vandenberg and a nationwide class; and 10) a

15  violation of the Magnuson-Moss Warranty Act on behalf of Vandenberg and a nationwide

16  class.

17  **D.     The Motion for Class Certification.**

18  On March 9, 2015, Plaintiffs filed the Motion.  On one hand, in the Amended

19  Complaint, Plaintiffs request "[m]onetary damages, including, but not limited to any

20  compensatory, incidental, or consequential damages in an amount to be determined at

21  trial . . . with respect to the common law claims alleged[.]"  Amended Complaint, p. 27, ¶H.

22  Further, under the California consumer protection statute causes of action (Counts 1-4),

23  Plaintiffs *only* seek damages.  On the other hand, Plaintiffs now move to certify a class for

---

24  [7] The Plaintiffs' deposition transcript excerpts are attached to the Wallan Decl. as Exhibits
25  1-3.  Further deposition citations herein will refer only to the page and line of the
    transcript.

26  [8] *See* Cal. Bus. & Prof. Code §17200 *et seq.*

27  [9] *See* Cal. Bus. & Prof. Code §17500 *et seq.*

28  [10] *See* Fla. Stat.§§501.201 *et seq.*

1    injunctive relief under Rule 23(b)(2) or for issue certification under Rule 23(c)(4), ignoring

2    damages.  Plaintiffs' recent about-face can only be attributed to a recognition that Plaintiffs

3    cannot satisfy the more stringent requirements of Rule 23(b)(3).

4            In addition, seemingly recognizing that a nationwide class under a variety of states'

5    consumer protection laws is inappropriate, Plaintiffs present alternative state classes

6    consisting of California, Florida and New York residents for relief under Rules 23(a), (b)(2)

7    and (c)(4).

8    **III.    ARGUMENT**

9            **A.    This Court Should Deny Class Certification Because Plaintiffs Lack**

10                   **Article III Standing to Bring This Motion.**

11           As a threshold issue in deciding this motion for class certification, this Court must

12   confirm that it has subject matter jurisdiction by inquiring into Plaintiffs' standing to bring

13   each of the claims they raise.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th

14   Cir. 2011); s*ee also Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)

15   ("constitutional standing requirements [must be] satisfied before proceeding to the merits.")

16   (quoting *United States v. Hays*, 515 U.S. 737, 742 (1995)).   "[S]tanding requires that (1)

17   the plaintiff suffered an injury in fact, *i.e.*, one that is sufficiently concrete and

18   particularized and actual or imminent, not conjectural or hypothetical, (2) the injury is fairly

19   traceable to the challenged conduct, and (3) the injury is likely to be redressed by a

20   favorable decision." *Ellis*, 657 F.3d at 978 (quoting *Lujan v. Defenders of Wildlife*, 504

21   U.S. 555, 560-61 (1992)) (internal quotation marks omitted).  Here, Plaintiffs cannot satisfy

22   the strict Article III standing requirements.

23           1.    Plaintiffs Have Not Been Injured.

24           Plaintiffs have not suffered from a "concrete and particularized injury-in-fact" as

25   required for Article III standing.  The Amended Complaint alleges that Plaintiffs were

26   injured because, in reliance on Medora's deceptive conduct, they bought a product that they

27   would not have purchased had they known it contained GMOs.  But Plaintiff Nguyen

28   admitted that she will purchase food containing GMOs, and that she has no damages related

1    to her purchase of Popcorners.  Nguyen Depo., 76:4-77:12, 82:22-24.  Plaintiff Vandenberg,

2    knowing that most domestic corn has GMOs, still eats corn-based products without regard

3    to whether or not he is apprised that they contain GMOs.  Vandenberg Depo. 16:23-17:4,

4    38:7-12, 44:15-22.  And Plaintiff Blackwood admits that she did not see any representations

5    on the bag when she selected Popcorners, and also that she continued to purchase

6    Popcorners long after Medora removed the challenged label.  Blackwood Depo. 19:19-

7    21:23, 53:20-54:8.  Plaintiffs were not injured because they were not misled.

8                    2.    <u>Plaintiffs Are Not "Imminently Threatened" With an Injury Because</u>

9                          <u>Medora Removed the Challenged Label in 2013.</u>

10           There is simply no danger of a recurrent violation sufficient to warrant injunctive

11   relief.  *See Contessa Food Prods, Inc. v. Lockpur Fish Processing Co., Ltd.*, No. CV98-

12   8218NMSHX, 2003 WL 25778704 (C.D. Cal. Jan. 29, 2003).  Here, Plaintiffs offered no

13   evidence hinting that Medora would resume using the challenged label.  Medora's Chief

14   Financial Officer has confirmed that Medora has no plans to ever use the term "All

15   Natural" on its Popcorners packaging because, in Medora's view, the "All Natural" label

16   does not promote sales.  Ruppel Decl., ¶¶8, 11.  As such, Plaintiffs have not, and cannot,

17   show with any reasonable likelihood that Medora will re-introduce an "All Natural" label

18   on Popcorners.

19           In the most analogous case cited by Plaintiffs, the plaintiff sought injunctive relief to

20   enforce a court order restricting the way defendant could label its shrimp.  *Contessa*, 2003

21   WL 25778704 at *7.  In *Contessa,* the court denied injunctive relief, finding that "the

22   allegedly wrongful behavior could not reasonably be expected to recur."  *Id.*  In so ruling,

23   the *Contessa* court demonstrated the rigorousness of the standing requirements by refusing

24   to grant injunctive relief to enforce its own order.  *Id.*  New York law is also consistent with

25   California case law on this point. *See In re Scotts EZ Seed Litig.*, No. 12-cv-4727-VB, 2015

26   WL 670162 at *6 (S.D.N.Y. Jan. 26, 2015) (denying certification of class for injunctive

27   relief as "not . . . necessary" because challenged label removed from packaging).  Here,

28   Medora *voluntarily* ceased to use the "All Natural" label on its Products *before* Plaintiffs

1    filed suit, and its sales have *increased* since Medora removed the challenged label.  Ruppel

2    Decl., ¶¶6-8.  Plaintiffs also cite *Am. Fed'n of Gov't Emps., AFL-CIO v. Brown*, 866 F.

3    Supp. 16, 19 (D.D.C. 1994), where Veterans Administration issued a memorandum

4    reversing its challenged policies, rendering plaintiffs' claim to enjoin those policies moot.

5    Plaintiffs do not have standing to move for injunctive relief here based on these cases.

6         The remaining cases cited by Plaintiffs are factually dissimilar and distinguishable

7    because they involve enjoining historical civil rights violations or environmentally

8    dangerous practices.  *See Friends of the Earth, Inc. v. Laidlaw Env. Servs. (TOC), Inc.*, 528

9    U.S. 167, 189 (2000); *Allee v. Medrano*, 416 U.S. 802, 811 (1974), *superseded by statute*

10   *on other grounds*; *N.Y. State NOW v. Terry*, 159 F.3d 86, 91-92 (2d Cir. 1998); *Gulino v.*

11   *Bd. of Educ. of the City Sch. Dist. of N.Y.*, 907 F. Supp. 2d 492, 509 (S.D.N.Y. 2012);

12   *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *Etuk v. Slattery*, 936 F.2d 1433,

13   1441 (2d Cir. 1991); *N.Y. Cmtys. For Change v. N.Y. City Dep't of Educ.*, No. 11 CV 3494

14   (SJ), 2012 WL 7807955 at *39-40 (E.D.N.Y. Aug. 29, 2012).

15              3.    Plaintiffs Are Not "Imminently Threatened With Injury" Because

16                   They Have No Plans to Purchase Popcorners in the Future.

17        Plaintiffs have not suffered the non-speculative threat of actual harm required for

18   Article III standing.  There is no threat of imminent harm because Plaintiffs have no plans

19   to buy more Popcorners.   Wallan Decl. ¶¶ 4-6, Exhs. 1-3 (Nguyen Depo., 60:15-61:2;

20   Vandenberg Depo., 30:11-15;  Blackwood Depo., 24:10-15, 53:20-54:8).  The law is clear

21   that a plaintiff who asserts no affirmative intention of purchasing a product in the future has

22   no standing to seek prospective injunctive relief regarding that product.  *See e.g., Rahman v.*

23   *Mott's LLP*, No. 13-cv-03482-SI, 2014 WL 5282106, at *5-6 (N.D. Cal. Oct. 15, 2014)

24   (discussing issue and citing cases); *see also Bird v. First Alert, Inc.*, No. C 14-3585 PJH,

25   2014 WL 7248734, at *5 (N.D. Cal. Dec. 19, 2014) (motion to dismiss claims for injunctive

26   relief of products plaintiffs have no intention of purchasing again properly granted for lack

27   of standing); *Jones v. ConAgra Foods,* No. C 12-1633-CRB, 2014 WL 2702726, (N.D. Cal.

28

June 13, 2014) *appeal docketed,* No. 14-16327 (9th Cir. Nov. 21, 2014)[11] (plaintiffs do not have standing to bring claim for injunctive relief in food mislabeling case because they have no intention of purchasing food again). For instance, in one case a plaintiff testified, "that [the Product] doesn't work" and that the product (or its packaging or the advertisement of the product) is a "false advertisement." *Delarosa v. Boiron, Inc.*, No. SA-CV-10-1569-JST CWX, 2012 WL 8716658, at *4 (C.D. Cal. Dec. 28, 2012). Based only on this testimony and the plaintiff's response to defendant's statement of undisputed fact that plaintiff would not purchase product again (the plaintiff responded, "irrelevant"), the court held that, "[the plaintiff] does not have Article III standing to seek injunctive relief because there is no 'threat of future injury' that could be redressed by injunctive relief." *Id.*; *see also id.*, "Statement of Genuine Issues in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment." (Dkt. 152-1, ¶19; Feb. 2, 2012).

Florida law is consistent with California law on this point. *See, e.g., Seidman v. Snack Factory, LLC*, No. 14-62547-civ-Cohn/Seltzer, "Order re Motion to Dismiss Plaintiff's Class Action Complaint," at p. 8 (S.D. Fla. March 26, 2015) (when plaintiff "has not alleged that he will ever purchase Defendant's [product] again, [he] thus cannot show any likelihood of future injury sufficient to afford him standing to enjoin Defendant from continuing its purported mislabeling.").

4.     <u>Plaintiffs' Alleged Injuries Are Not Traceable to the Challenged Label.</u>

Even if Plaintiffs were injured or likely to suffer an imminent injury, they could not "trace their injury" to the challenged label. In their Motion and Amended Complaint, Plaintiffs' generally claim to have relied on the "All Natural" label to mean "non-GMO" in

---

[11] In *Gustavson v. Mars, Inc.*, No. 13-cv-04537-LHK, 2014 WL 6986421 (N.D. Cal. Dec. 10, 2014), Hon. Lucy Koh stayed a class action pending the outcome of *Jones v. ConAgra*. One plaintiff in *Jones v. ConAgra* is appealing the District Court's denial of class certification for injunctive relief: the court found plaintiffs lacked standing because they did not indicate that they would purchase the product again. However, regardless of the outcome of the *Jones v. ConAgra* appeal, Plaintiffs in this case still lack standing because Medora removed the challenged label prior to litigation.

1  purchasing Popcorners. But their testimony demonstrates the opposite.  Nguyen testified

2  that she was not damaged by her purchase of Popcorners and that she does not avoid

3  purchasing products containing GMOs.  Nguyen Depo., 76:4-77:12.  Plaintiff Vandenberg

4  admitted that he will eat food containing corn whether or not he knows if the corn is non-

5  GMO despite the fact that he knows that most corn is GMO; this testimony reveals that "All

6  Natural" or "non-GMO" are not material representations to him and that he does not rely on

7  them.  Vandenberg Depo., 16:23-17:4, 38:7-12, 44:15-22.  Plaintiff Blackwood testified

8  that she purchased large quantities of Popcorners in 2014, after the label was changed; she

9  did not even look at the label, never mind rely in its representations.  Blackwood Depo.,

10  19:19-21:23, 53:20-54:8.  Finally, Blackwood admits that she eats GMO foods, and does

11  not research foods to see if they contain GMOs before she consumes them.  *Id.*, 38:8-39:11,

12  42:21-43:14.

13              5.    <u>Injunctive Relief Will Not Redress Plaintiffs' Alleged Injuries.</u>

14          Plaintiffs fail the final prong of the Article III test because their absence of an injury

15  highlights that there is nothing for this Court to "redress."  A Court may certify a Rule

16  23(b)(2) class if "the party opposing the class has acted or refused to act on grounds that

17  apply generally to the class, so that final injunctive relief or corresponding declaratory relief

18  is appropriate respecting the class as a whole."  Rule 23(b)(2).  Plaintiffs contend that they

19  need either an "[o]rder prohibiting Defendant from falsely and misleadingly labeling

20  Popcorners as 'All Natural' despite the presence of GMOs (or to reformulate the products

21  to remove GMOs)."[12]  Motion, p. 13.  When seeking to enjoin allegedly illegal conduct that

22  defendant has voluntarily discontinued, the moving party must satisfy the court that relief is

23  needed because "there exists some cognizable danger of recurrent violation, something

24  more than the mere possibility which serves to keep the case alive."  *W.T. Grant Co.*, 345

25

---

26  [12] Plaintiffs ask for a mandatory injunction compelling Medora to purchase non-GMO corn
     as an aside, without any support or precedent.  Because mandatory injunctions are not
27  granted "unless extreme or very serious damage will result and are not issued in doubtful
     cases[,]" this throwaway line suggests a very inappropriate remedy.  *See Anderson v.*
28  *United States*, 612 F.2d 1112, 1114 (9th Cir. 1979).

1    U.S. at 633.

2         Specifically, Plaintiffs do not dispute that the allegedly offending label was changed

3    in late 2013.  Plaintiffs point to nothing to suggest there is any "threat" that Medora will

4    change its label back to include an "All Natural" statement.  To the contrary, Medora's

5    Chief Financial Officer Michael Ruppel testified that the "All Natural" claim had no

6    discernable impact on sales, and that sales of this snack food increased after the label

7    change.  Ruppel Decl., ¶¶7, 8.  None of the Plaintiffs is in any danger of being mislead

8    again to their detriment; in fact, all of the Plaintiffs testified that they continue to eat food

9    containing GMOs.[13]  There is nothing to suggest that a decision in this case will redress any

10   wrong, where the allegedly offending label claim was moot before any litigation was filed.

11              6.    Corrective Advertising Will Not Redress Plaintiffs' Alleged Injuries.

12        Plaintiffs state that, "corrective advertising is appropriate . . . [and] should be

13   oriented toward eliminating the false nature of the offending ad as well as the confusion it

14   engenders in the minds of consumers."  Motion, p. 17.  Corrective advertising is only

15   appropriate if plaintiffs have lost a significant market share or experienced a competitive

16   disadvantage.  *See Merck Eprova AG v. Gnosis S.P.A.*, No. 07 Civ. 5898 (RJS), 2013 WL

17   1385208 (S.D.N.Y. Mar. 7, 2013); *Linotype Co. v. Varityper, Inc*., No. 89 Civ. 4747 (MJL),

18   1989 WL 943385 (S.D.N.Y. Aug. 4, 1989); *Johnson & Johnson Vision Care, Inc. v. Ciba*

19   *Vision Corp.*, 348 F. Supp. 2d 165 (S.D.N.Y. 2004).  In this matter, Plaintiffs are consumers,

20   not competitors vying for market share.  Consequently, the corrective advertising theory is

21   inapplicable here.  *Id.*

22        Two of the five cases cited by Plaintiffs do not discuss corrective advertising at all.

23   *See Burndy Corp. v. Teledyne Indus., Inc.,* 748 F.2d 772 (2d Cir. 1984); *see also Nat'l*

24   *Geographic Soc'y v. Conde Nast Publ*., 687 F. Supp. 106 (S.D.N.Y. 1988).  In fact, while

25   Plaintiffs cite to *National Geographic Society* for the principle that "the court has broad

26   discretion to determine the appropriate remedy," they selectively exclude language in the

27

28   _____
[13] *See* Nguyen Depo., 76:4-77:12; Vandenberg Depo., 16:23-17:4, 38:7-12, 44:15-22;
       Blackwood Depo., 38:8-39:11, 42:21-43:14.

1    decision urging courts to adopt "the least disruptive remedy" that avoids confusion.  687 F.

2    Supp. at 110.

3         Plaintiffs have not alleged any damages that warrant the remedy of corrective

4    advertising, nor have they suggested what "corrective" advertising would accomplish.

5    Thus, corrective advertising is not an appropriate remedy here.

6         **B.      This Court Should Deny Class Certification Because the Proposed Class**

7              **Is Not Ascertainable.**

8         "As a threshold matter, and apart from the explicit requirements of Rule 23(a), the

9    party seeking class certification must demonstrate that an identifiable and ascertainable

10   class exists." *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009); *see also* Motion, p.

11   15.  Under the ascertainability doctrine, the class must be sufficiently definite so that it is

12   feasible for a court to determine membership by reference to objective criteria. *See*

13   *Williams v. Oberon Media, Inc.*, 468 Fed. Appx. 768, 770 (9th Cir. 2012).

14        Courts in the Ninth Circuit have denied certification where, as here, the proposed

15   class is so broadly drawn as to include people who were not injured at all or may have

16   suffered different injuries than the proposed class representatives.  *See, e.g., Daicakis v.*

17   *Comcast Corp.*, No. C 11-3002 SBA, 2013 WL 1878921, at *4 (N.D. Cal. May 3, 2013).[14]

18   Courts have also denied certification when plaintiffs fail to outline a class definition that is

19   sufficiently definite so that it is administratively feasible to determine whether a particular

20   person is a class member, particularly if the product is a small-ticket item and defendant is a

21   wholesale manufacturer that does not possess records of customer identities or their

22   purchases. *Sethavanish v. ZonePerfect Nutrition Co.*, No. 12-2907-SC, 2014 WL 580696,

23   at *4, *5-6 (N.D. Cal. Feb. 13, 2014).[15]

---

25   [14] *See also Algarin v. Maybelline, LLC,* 300 F.R.D. 444 , 456 (S.D. Cal 2014) (class
     definition was overbroad when it included purchasers who may have received their
26   money back or coupons); *Mazur.*, 257 F.R.D. at 567 (proposed class definition was
     overbroad if it included "non-harmed" parties).

27   [15] *See Xavier v. Philip Morris USA Inc.,* 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011); *see*
28   *also Astiana v. Ben & Jerry's Homemade, Inc.*, No. C-10-4387-PJH, 2014 WL 60097, at

1    Plaintiffs define their class as follows:  "[a]ll persons who purchased one or more of

2  Defendant's Products since February 10, 2010 in the United States and its territories, for

3  personal use and not resale when the following claim was on the packaging and/or labeling

4  of the of the Products: 'All Natural.'"  Motion, p. 2.  The required ascertainability standard

5  cannot be met with this hopelessly overbroad and unmanageable class definition and lack of

6  any plan to locate members.

7    Plaintiffs' definition is impermissibly broad because it includes uninjured members.

8  Given the material increase in Popcorners sales after "All Natural" was removed, it is only

9  reasonable to conclude that the large majority of Popcorners purchasers did not care about

10  the label, and thus were not injured.  Ruppel Decl., ¶7.  For example, Plaintiff Blackwood

11  selected Popcorners while on a Jet Blue plane without reading the label.  It stands to reason

12  that others like her chose Popcorners from the display on the flight attendant's cart without

13  reading the label.  Wallan Decl., ¶6, Exh. 3 (Blackwood Depo., 19:19-21:23).  Also, the

14  proposed class membership includes individuals who could have already received a refund,

15  coupon, or store credit; it could also include individuals who only ate Popcorners on Jet

16  Blue flights and never paid for Popcorners at all.  Medora, as a wholesaler, has no way to

17  determine the identity of class members or whether retailers have already redressed their

18  alleged injury.  Ruppel Decl., ¶15.

19    Further, class membership is unascertainable because Plaintiffs do not even attempt

20  to present an administratively feasible method to identify absent class members.

21  Popcorners suggested retail price for a five ounce bag is $1.99, but not one named plaintiff

22  could recall the exact date or amount of each purchase.  Wallan Decl. ¶¶ 4-6, Exhs. 1-3

23

24

25

26  *3; (N.D. Cal. Jan. 7, 2014); *Red v. Kraft Foods, Inc.*, No CV-10-1028-GW (AGRx), 2011 WL 4599833, at *8 (C.D. Cal. Sept. 29, 2011);  *Hodes v. Van's Int'l Foods*, No. 09-

27  01530 RGK (FFMx), 2009 WL 2424214, at *4 (C.D. Cal. July 23, 2009); *In re POM Wonderful*, No. ML 10-02199 DDP (RZx), 2014 WL 1225184, at *5-6 (C.D. Cal. March

28  25, 2014).

1   (Nguyen Depo., 24:9-19; Vandenberg Depo., 28:11-29:5; Blackwood Depo., 55:25-56:2).[16]

2   Medora has no means of identifying the end consumers who purchased from Medora's

3   distributors.  Ruppel Decl., ¶15.  If a class were certified, consumers would have to self-

4   identify, leading to problems of "consumer say-so," infringing on Medora's due process

5   rights.  Even if class members could "self-identify," Plaintiffs do not propose any method

6   "to weed out *inaccurate* or fraudulent claims." *See Sethavanish*, 2014 WL 580696 at *6.

7   Because the Named Plaintiffs do not recall what they paid for Popcorners, and have no

8   purchase records, it is reasonable to assume that this problem will infect virtually all of the

9   proposed class.

10          Finally, according to Plaintiffs, "[r]esearch shows that a majority of consumers

11  expect 'natural' foods to be free of GMOs[.]"  Motion, p. 3. But in support of this assertion,

12  Plaintiffs cite to a report published by the Cornucopia Institute; this report also states that

13  "[g]enerally, 'natural' means the absence of artificial ingredients, commonly referencing

14  preservatives, *but does not signify that the ingredients grown and processed in ways that*

15  *avoid 'unnatural' inputs such as synthetic pesticides and genetically engineered*

16  *organisms*." [17]  Page 29 of that report, as cited by Plaintiffs at page 3 of the Motion, refers

17  to a poll by the Hartman Group showing that 61% of consumers believe that the "natural"

18  claim implied or suggested the absence of genetically engineered food.  But Plaintiffs'

19  reliance on that poll demonstrates that 39% of consumers *do not* believe that a "natural"

20  claim suggests a lack of genetically engineered food.  Even Plaintiffs' advocacy group

21  authorities acknowledge a lack of connection between "all natural" and GMO.  While

22  Plaintiffs seek to certify a class of all purchasers of Popcorners, they identify no method to

23  "weed out" the 39% of the public that, according to their evidence, does not associate "All

24  _____

25  [16] Plaintiff Pearline Blackwood did remember that, at least for some of her purchases, she
        paid $1.49 for a bag of Popcorners.  Blackwood Depo., 26:6-21.  However, because she

26      likely paid different prices at different locations and times for Popcorners, her alleged
        "injury" would be wholly unascertainable.

27  [17] *See*, http://cornucopia.org/cereal-scorecard/docs/Cornucopia_Cereal_Report.pdf, p. 9

28      (emphasis added).

- 13 -

1   Natural" with "Non-GMO," and who are thus not injured.  The proposed class is not

2   ascertainable, and certification should be denied.

3       **C.      This Court Should Deny Class Certification Because the Named**

4               **Plaintiffs Are Not Typical.**

5       Under Rule 23(a), courts may certify a class only where plaintiffs satisfy the

6   requirements of numerosity, commonality, typicality and adequacy of representation.

7   *Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2014 WL 2860995 at *3 (N.D. Cal.

8   June 23, 2014).  Further, plaintiffs may only maintain a class action where they have

9   satisfied the requirements of Rule 23(b) through "evidentiary proof."  *Comcast Corp. v.*

10  *Behrend*, 133 S. Ct. 1426, 1432 (2013).

11      In this case, typicality has not been shown, and thus class certification fails.  "The

12  purpose of the typicality requirement is to assure that the interest of the named

13  representative aligns with the interests of the class."  *Stearns v. Ticketmaster Corp.*, 655

14  F.3d 1013, 1019 (9th Cir. 2011) (internal quotation and citation omitted).  This Court has an

15  obligation to "ensure that the litigation is brought by a named Plaintiff who understands and

16  controls the major decisions of the case."  *Sanchez v. Wal-Mart Stores, Inc.*, No. 1514435,

17  2009 WL 1514435 at *3 (E.D. Cal. May 28, 2009).  The test for typicality is "whether other

18  members have the same or similar injury, whether the action is based on conduct which is

19  not unique to the named plaintiffs, and whether other class members have been injured by

20  the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.

21  1992).

22      Here, Plaintiffs' claims are atypical of those of the proposed class because each of

23  the Plaintiffs is not injured, their understanding of "all natural" differs amongst themselves,

24  and they are all "subject to unique defenses which threaten to become the focus of the

25  litigation."  *Hanon*, 976 F.2d at 508.  Plaintiffs' claims are not even typical of each other.

26  Their testimony indicates that they do not share common definitions or understandings of

27  the terms "GMO" and "All Natural."  Plaintiff Nguyen believes "All Natural" means "[n]ot

28

1    synthetic, not modified," and "cross-bred food" is "genetically modified."[18]  Nguyen Depo.

2    32:4-7, 38:12-15.  She also says that she believes "organic" means "natural."  *Id.*, 32:1-3,

3    53:21-23.  Plaintiff Vandenberg believes that "All Natural" means "[you] [s]hould be able

4    to find it in nature."  Vandenberg Depo., 32:10-12.  He also believes that it means no added

5    coloring.  *Id.*, 41:22-42:2.  Plaintiff Blackwood believes that "All Natural" means "nothing

6    has been added to it."  Blackwood Depo., 47:10-14.

7         Plaintiffs are also subject to unique defenses: as discussed before, they are not

8    injured and face no imminent injury.  *See* discussion *supra* Sections III(A)1, 2.  Further,

9    Plaintiffs did not rely on the challenged label, and they have suggested no tenable form of

10   relief to redress their alleged injuries.  *See* discussion *supra* Section III(A)4.

11        **D.    This Court Should Deny Issue-Only Class Certification Because**

12              **Plaintiffs' 23(c)(4) Theory Is an Attempt to Evade the Predominance**

13              **Requirement of a Damages Class.**

14        Plaintiffs argue that this Court may certify a class for liability purposes under Rule

15   23(c)(4), deciding the issue of: "whether Defendant has misled consumers by labeling

16   Popcorners 'All Natural,' when, in fact, they are made from GMOs."  Motion, p. 18.

17   Plaintiffs seem to believe that by certifying a 23(c)(4) issue class, they have reserved their

18   right to a class-wide determination of damages following the liability determination.  *Id.*[19]

19   However, they support this belief with the bare statement: "[i]mportantly, the Court, if

20   necessary, can manage damages-related issues through well-established judicial

21   _____

22   [18] As such, Plaintiff reveals that she would not find *any* corn to be "All Natural," because
        even Non-GMO corn, as we know it, is a plant cross-bred from another plant (teosinte)
23      for thousands of years to produce a more edible food.  *See* David Newland, *Sorry
        Hipsters, That Organic Kale Is a Genetically Modified Food*, Smithsonian.com, Sept. 10,
24      2014, http://www.smithsonianmag.com/science/sorry-hipsters-organic-kale-genetically-
        modified-food-180952656/.

25   [19] Some courts have recognized that having a liability trial on the merits and following said
        "mini trial" with another trial for the determination of damages violates the
26      Reexamination Clause of the Seventh Amendment of the Constitution.  *See In re Rhone-
        Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995) (declining certification where
27      issues of negligence and proximate cause were so closely intertwined that they would
        violate the Seventh amendment's reexamination clause).

28

1  management procedures in a post-judgment claims process." *Id*.  Issue certification is

2  inappropriate given the facts at hand, and Plaintiffs have effectively waived any claim to

3  damages by failing to try to plead or brief predominance.

4          1.    Plaintiffs Must Prove Predominance of Damages to Certify a

5                   Liability-Only Issue Class.

6        Courts will only certify an issue-only class under Rule 23(c)(4) to materially

7  advance resolution of a case.  *See Rahman,* 2014 WL 6815779, at *8-9.  To "materially

8  advance the resolution of a case," a plaintiff must establish predominance of issues

9  regarding the determination of damages.  *Id.*; *see also Saavedra v. Eli Lilly & Co.*, No.

10  2:12-CV-9366-SVW, 2014 WL 7338930, at *10 (C.D. Cal. Dec. 18, 2014) (denial of

11  motion to certify issue-only class under Rule 23(c)(4) because no showing of predominance

12  of issues regarding damages calculation so certification would not advance resolution of

13  case); *Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2014 WL 4652283, at *10 (N.D.

14  Cal. Sept. 18, 2014) (23(c)(4) issue certification granted because plaintiffs established

15  predominance by producing, "expert reports or at least some evidentiary foundation . . .to

16  establish the feasibility and fairness of damage assessments").

17        The *Rahman* court employed a two-prong test to determine if plaintiffs satisfied

18  their predominance burden: (1) that "damages are capable of measurement on a classwide

19  basis," and (2) that there is a nexus between his theory of liability and his method of

20  proving damages.  *Rahman*, 2014 WL 681577 at *7 (citing *Comcast Corp. v. Behrend*, 133

21  S. Ct. at 1433).

22        In *Rahman*, plaintiffs alleged that they paid a premium when defendant sold apple

23  juice with the label, "No Sugar Added."  *See Rahman,* 2014 WL 6815779, at *10.  Because

24  plaintiffs could not demonstrate what portion of the apple juice sale price was attributable

25  to the "No Sugar Added" statement, the court denied certification under 23(b)(3) for lack of

26  predominance: "[a]lternatively, allowing myriad individual damages claims to go forward

27  would not be a reasonable or efficient alternative, particularly where the average class

28  member is likely to have suffered less than a hundred dollars in damages." *Id.*, *9.  As such,

1 because Rule 23(c)(4) would not materially advance the resolution of the case, the court

2 denied the plaintiff's motion to certify a liability-only issue class. *Id.*

3       Some courts impose an even higher burden on plaintiffs than the *Rahman* two-

4 pronged predominance test. Some courts have held that without offering a damages model,

5 plaintiffs cannot sustain any of their claims. *See Ben & Jerry's Homemade*, 2014 WL

6 60097 at *13 ("[P]laintiff has provided no damages evidence. More importantly, her failure

7 to offer a damages model . . . bars her effort to obtain certification of the class."); *see also*

8 *Comcast Corp. v. Behrend*, 133 S. Ct. at 1433; *In re Rail Freight Fuel Surcharge Antitrust*

9 *Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013) (citing *Behrend*, 133 S. Ct. at 1433)). Typically

10 in food labeling cases, plaintiffs rely on testimony of a damages expert who proposes one or

11 more quantitative methods for measuring damages. *See, e.g., Werdebaugh v. Blue*

12 *Diamond Growers*, No. 12-cv-02724-LHK, 2014 WL 2191901, at *23-26 (N.D. Cal. Dec.

13 15, 2014) (outlining three methods for damages assessment proposed by the plaintiff's

14 expert); *In re POM Wonderful LLC*, 2014 WL 1225184 at *2-5 (evaluating each of the

15 plaintiffs' damages models and their expert's opinion and decertifying class for failure to

16 provide a workable damages model).

17              2.    <u>Plaintiffs' Failure to Even Attempt to Establish the Predominance of</u>

18                  <u>Damages in Their Motion Precludes Class Certification.</u>

19       Plaintiffs do no more than merely speculate that this Court will manage their

20 "damages-related issues." Motion, p. 18. Plaintiffs neither mention predominance nor

21 propose a *method* of determining damages, probably because there is no proper method or

22 available proof for calculating damages in the case at hand and individual damages issues

23 clearly predominate. Under the *Ben & Jerry's*, *Comcast*, et al., line of cases, Plaintiffs'

24 failure to address this issue is sufficient grounds for denial of class certification.

25       Even under the slightly more forgiving standards in *Rahman* and *Saavedra*,

26 certification of an issue-only class would not be appropriate. An issue-only class would not

27 materially advance this case's resolution or achieve economies of time and expense because

28 a second hearing to determine damages would be overwhelmingly complex. *See Rahman*,

1    2014 WL 6815779 at *9.  Just as restitution damages in *Rahman* would involve

2    demonstrating what portion of the three dollar sale price was attributable to the value

3    consumers placed on the "No Sugar Added" representation by Mott's Apple Juice, the

4    individualized damage calculations in this case would turn on the subjective value of the

5    "All Natural" statement to each individual consumer.  *See id*., *8.  As such, Plaintiffs

6    cannot show that "damages [can] feasibly and efficiently be calculated" and an issue-only

7    class should not be certified.  *See id.*

8         Plaintiffs' bare statements do not meet their burden to show evidentiary proof of a

9    method of calculating damages, much less an appropriate quantitative model.  Because

10   Plaintiffs offer no specific damages model, Defendant is unable to respond with any

11   particularity.

12        Further, even if Plaintiffs did present different theories of recovery, because of the

13   nature of this case, none of these theories would be appropriate for the reasons listed below.

14        <u>Full refund</u>:  Here, as in *In re POM Wonderful*, a full refund would be unjust

15   because it fails to deduct the value of the benefit Plaintiffs received from Popcorners, and a

16   partial refund model is impossible, at least on the record before this Court, as Plaintiffs

17   have no evidence of the price they paid for Popcorners and have not presented any model

18   for calculating the benefit they received from Popcorners.  2014 WL 1225184 at *2.

19        <u>Restitution</u>:  For a restitution calculation, Plaintiffs and class members would each

20   have to establish their value of Popcorners, specifically determining the impact flavor,

21   convenience, taste, labeling, and marketing have on their decision to purchase.  "There is no

22   authority for the proposition that a plaintiff seeking restitution may retain some unexpected

23   boon, yet obtain the windfall of a full refund and profit from a restitutionary award.  Nor

24   can Plaintiffs plausibly contend that they did not receive any value at all from Defendant[s']

25   products."  *In re POM Wonderful*, 2014 WL 1225184 at *3.  This value would differ

26   greatly from consumer to consumer.  Further, sales of Popcorners *increased* when the "All

27   Natural" label was removed, so Medora has provided evidence that there is no "price

28   premium" attached to "All Natural."  Ruppel Decl, ¶¶7-8, 11.

1    Disgorgement:  Finally, "[u]nlawful profits unfairly obtained can provide a measure

2    for recovery, but only 'to the extent that these profits represent monies given to the

3    defendant or benefits in which the plaintiff has an ownership interest.'" *Ben & Jerry's*

4    *Homemad*e, 2014 WL 60097, at *11 (quoting *Korea Supply Co. v. Lockheed Martin Corp*.,

5    29 Cal. 4th 1134, 1148 (Cal. 2003)).  Thus, under a disgorgement theory as much as under a

6    refund theory, Plaintiffs must be able to demonstrate what portion of their damages stem

7    from the Defendant's purportedly unlawful conduct.  Plaintiffs have offered no method for

8    making such a calculation, even if one were appropriate.  In fact, the evidence of record

9    demonstrates that Defendant sold a greater amount of Popcorners after the "All Natural"

10    label was removed, so even if disgorgement were an appropriate method and Plaintiffs had

11    provided a proper model, the end result would be no recovery for the class.  Ruppel Decl.,

12    ¶¶7-8, 11.

13        3.    The Issue of Whether Consumers Relied on "All Natural" Varies

14            From Consumer to Consumer and Thus Does Not Predominate.

15        The Rule 23(b)(3) predominance test is far more demanding than asking whether

16    there are common issues to the class under 23(a)(2).  *Amchem Prods., Inc. v. Windsor*, 521

17    U.S. 591, 623-24 (1997).  Accordingly, Ninth Circuit authority dictates that "[i]f [a]

18    misrepresentation or omission is not material to all class members, the issue of reliance

19    'would vary from consumer to consumer' and the class should not be certified."  *Stearns v.*

20    *Ticketmaster Corp.*, 655 F.3d at 1022-23 (quoting *In re Vioxx Class Cases*, 180 Cal. App.

21    4th 116, 128 (Cal. 2009)); *see also Sanchez v. Wal–Mart Stores, Inc*., 2009 WL 1514435, at

22    *3.

23        Plaintiffs incorrectly contend that the materiality of Medora's misrepresentation

24    yields an inference of reliance.  But, courts have found that the term "All Natural" is not a

25    material representation.  In *Astiana v. Kashi Co.*, 291 F.R.D. 493, 508 (S.D. Cal. 2013), and

26    *Thurston v. Bear Naked, Inc*., No. 3:11-cv-02890-H (BGS), 2013 WL 5664985, at *8 (S.D.

27    Cal. July 30, 2013), Judge Huff declined to certify classes because the plaintiffs had not

28    shown common proof of reliance on the term "All Natural."

1    Here, Plaintiffs have failed to show with evidentiary proof that "a sufficient portion

2  of class members would have relied to their detriment on the representation, or that

3  Defendant[s'] representation of 'All Natural' in light of the presence of the challenged

4  ingredients would be considered to be a material falsehood by class members." *Astiana v.*

5  *Kashi Co.*, 291 F.R.D. at 508.  Plaintiffs fail to sufficiently show that "natural" has any kind

6  of uniform definition among Named Plaintiffs and class members; they have also failed to

7  show that a sufficient portion of class members would have relied to their detriment on the

8  representation, or that Medora's "All Natural" statement in light of the presence of GMO-

9  sourced corn would be considered to be a material falsehood by class members.  *See*

10  discussion *supra* Sections III(A)(4), III(C); *see also Lavie v. Procter & Gamble Co.*, 105

11  Cal. App. 4th 496, 508 (2003) (stating advertisements are deceptive only if a "significant

12  portion" of reasonable consumers might be misled).[20]

13    While Plaintiffs cite to a number of sources to support their view, other respected

14  publications have recognized that concerns with genetically modified foods on the market

15  are generally misplaced and unsupported.[21]

16    Further, Medora provides evidence demonstrating that food producers, consumers,

17  and the Food and Drug Administration all fail to define "natural" in any definite manner.

18  The FDA has not promulgated a formal definition of the term "natural" and has

19  acknowledged the existence of widely varying opinions on how the term is properly defined.

20  *See* 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993) (observing that commenters "provided a wide

21  range of ideas" regarding the definition of "natural").  Moreover, each of the Named

22  Plaintiffs provided a different definition of "All Natural" in their depositions.  *See supra*

23

24  [20] One study found that only 32% of Americans were able to define "GMO."  *See*

25  *http://www.medicaldaily.com/americans-buy-organic-non-gmo-food-without-knowing-what-it-means-thanks-marketing-311644*.

26  [21] *See e.g.* sources cited *supra* note 17; *see also* Joel Achenbach, *The War on Science; the*

27  *Age of Disbelief*, National Geographic (March, 2015).  On a lighter note, the anti-GMO fad has become the fodder of one late night comedian.  *See, e.g.*

28  https://www.youtube.com/watch?v=EzEr23XJwFY.

1   Section III(C).  Apparently, consumers buy Popcorners because they are tasty, and paid no

2   more because they were also labeled "All Natural."  Plaintiffs thus have not established that

3   class members' reliance on the "All Natural" statement predominates here.

4               4.       Plaintiffs' Issue Certification Cases Have No Application Here.

5        Plaintiffs cite two out-of-circuit cases that allow a post-Rule 23(c)(4) certification

6   individualized inquiry into damages.  *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796,

7   798 (7th Cir. 2013); *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liability*

8   *Litig.*, 722 F.3d 838 (6th Cir. 2013) (the Sixth Circuit certified liability-only issue class to

9   determine whether the alleged design defects caused biofilm and mold to accumulate as a

10  common issue for all members of the certified class).  However, these cases involve facts

11  distinguishable from the situation at hand.  Both cases involve situations where the

12  plaintiffs satisfied all of the requirements of 23(b)(3), including providing a damages model

13  that the court believed may become more workable after a determination of liability.  *Id.*

14  Both decisions are also restricted to a specific situation: a defect in front-loading washing

15  machines (*i.e.* expensive items) whereas individualized damages inquiries would be brief

16  and could facilitate the creation of a schedule of damages based on the cost of fixing or

17  replacing the washing machines (thus precluding further damages hearings).  *Id.*

18       These cases are inapposite.  The washing machine cases involved a defect that

19  effectively spoiled the use of the product.  A washing machine is useless if it is infested

20  with mold.  Most importantly, in these cases, the plaintiffs had concrete measures of

21  damages: whether they had to repair or replace the washer.  *See id.*  In the present case,

22  Popcorners is not "defective" because it contains American-sourced corn that is grown from

23  GMO seeds.  Even if Plaintiffs received a judgment decreeing that "All Natural" was a false

24  representation, the issues plaguing their damages calculation (as discussed *supra* Section

25  III(D)(2)) still remain: Plaintiffs do not offer a logical or feasible way of determining each

26  individual class member's damage.

27

28

**E.     This Court Should Deny Class Certification Because Plaintiffs' Motion Suffers From Other Insurmountable Defects.**

1.     <u>California Plaintiff Nguyen Cannot Certify a Nationwide Class Alleging Violations of the CLRA, UCL, and FAL.</u>

Due process requires a significant contact or aggregation of contacts to apply California substantive law where it will not be arbitrary or fundamentally unfair. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818-19 (1985).  Courts will not apply California consumer protection laws (CLRA, UCL, FAL) to other jurisdictions. *See, e.g., Mazza v. Honda Am. Honda Motor Co.*, 666 F.3d 581, 587, 590, 594 (9th Cir. 2012) (vacated district court's certification of nationwide class after performing governmental interests balancing test); *see also Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 2466559, at *14 (N.D. Cal. May 30, 2014) (appeal dismissed on Nov. 17, 2014) (court refused to certify nationwide class alleging violations of California consumer protection statutes in challenged "All Natural" label claim even though defendant headquartered in California) (damages class subsequently decertified by *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 5794873, at *14 (N.D. Cal. Nov. 6, 2014)).

Here, Medora is a New York limited liability company, so there is no presumption of jurisdiction under California Consumer Protection statutes.  Ruppel Decl. at 1.  However, under the governmental analysis test, certification of a nationwide class is still unavailing. California law will not apply to a nationwide class here because (1) consumer protection laws are materially different across affected states; (2) each jurisdiction has an interest in applying its own law to the issue because such a "true conflict" arises; and (3) other states' interest would be more impaired by not having their own law applied. *See Kearney v. Salomon Smith Barney*, 39 Cal. 4th 95, 107-108 (2006); *see also Mazza*, 666 F.3d at 590-92; *Sullivan v. Oracle Corp.*, 662 F.3d 1265 (9th Cir. 2011).  There are material differences in the laws of just the states addressed by Plaintiffs, and Florida and New York's interests would be impaired by application of California law to their respective residents' claims.

1          2.     Florida Plaintiff Vandenberg Cannot Certify a Nationwide Class

2                 Alleging Violations of the FDUTPA.

3          Like California, Florida has no interest in applying its consumer protection laws to

4   out-of-state class members who purchased products and allegedly suffered harm outside of

5   Florida. *See, e.g., Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 627 (S.D. Fla. 2008)

6   (refusal to certify nationwide class for violations of FDUTPA based alleged

7   misrepresentations, finding that each foreign state's policy interest in protecting its own

8   citizens through its consumer protection laws outweighed Florida's interest in protecting

9   out-of-state individuals).  As such, Florida plaintiffs cannot certify nationwide class for

10  violations of FDUTPA that occur outside of Florida. *See, e.g. Rebman v. Follett Higher*

11  *Educ. Grp., Inc.*, 248 F.R.D. 624, 632 (M.D. Fla. 2008); *Montgomery v. New Piper Aircraft,*

12  *Inc.,* 209 F.R.D. 221, 225-26 (S.D. Fla. 2002); *Hutson v. Rexall Sundown, Inc.*, 837 So.2d

13  1090, 1094 (Fla. Dist. Ct. App. 2003).

14         Vandenberg may not certify a nationwide class for violations of FDUPTA because

15  Medora, and its distributors, sold Popcorners in forty-nine states.  Ruppel Decl. at 17.

16  Therefore, those other forty-eight states' interest in protecting their citizens' interests

17  outweigh Florida's interest in protecting its citizens.

18         3.     A Privity Defense Destroys the Plaintiffs' Standing to Bring a Claim

19                for the Breach of the Implied Warranty of Merchantability.

20         The home States of each Named Plaintiffs, California, Florida and New York,

21  require privity between a seller and a consumer seeking to bring a claim for a breach of the

22  implied warranty of merchantability.  *See, e.g., In re ConAgra Foods, Inc.*, No. cv-11-

23  05379-MMM (AGRx), 2015 WL 1062756, at *37 (C.D. Cal. Feb. 23, 2015); *see also*

24  *Bailey v. Monaco Coach Corp.*, 168 F. App'x 893, 894 n.1 (11th Cir. 2006); *Garcia v.*

25  *Kashi Co.*, No. 12-21678-CIV, 2014 WL 4392163 (S.D. Fla. Sept. 5, 2014) (plaintiffs could

26  not bring implied warranty claim for "All Natural" products when they were not in privity

27  of contract with defendants); *Weiner v. Snapple Beverage Corp.*, No. 07 CIV. 8742 DLC,

28  2010 WL 3119452, at *12 (S.D.N.Y. Aug. 5, 2010).  Since the Plaintiffs are subject to this

1    privity defense, their claim for breach of the implied warranty of merchantability fails.

2              4.    The Magnusson-Moss Warranty Act Is Inapplicable Because the

3                    Class Does Not Have One Hundred Named Plaintiffs.

4          The Magnusson-Moss Warranty Act requires, "if the [civil action by consumer for

5    damages] is brought as a class action," that the action must name at least one hundred

6    plaintiffs.  15 U.S.C. § 2310 (d)(3)(C).  The Amended Complaint names three proposed

7    representative Plaintiffs, so the Magnusson-Moss Warranty Act is inapplicable here.

8    **IV.    CONCLUSION**

9          Plaintiffs have not shown that they need relief as individuals, or that the proposed

10   class needs relief.  Nguyen admits she was not damaged, and all Named Plaintiffs admit to

11   eating other foods without regard to GMO content.  The "All Natural" part of Popcorners

12   packaging was not a material representation to Named Plaintiffs.  Popcorners strong sales

13   increase after the 2013 label change is very strong evidence that, on the whole, its

14   consumers did not care about the presence or absence of the words "All Natural" on the

15   package.  Plaintiffs' own evidence confirms that a large proportion of consumers do not

16   associate the term "All Natural" with GMO content, destroying any prospect of typicality,

17   ascertainability, or standing for this proposed class.  For the reasons explained above,

18   Medora respectfully requests that this Court deny Plaintiffs' Motion.

19   Dated: April 22, 2015

20                                  PILLSBURY WINTHROP SHAW PITTMAN LLP
21                                  ROBERT L. WALLAN
                                    ALYSON PARKER
22

23
                                    By:_____/s/ Robert L. Wallan_____
24                                        Robert L. Wallan
25                                  Attorneys for Defendant
                                    MEDORA HOLDINGS, LLC
26

27

28