UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KARISA NGUYEN, et al., | Case No. 5:14-cv-00618-PSG |
| Plaintiffs, | **ORDER DENYING MOTION FOR CLASS CERTIFICATION** |
| v. | |
| MEDORA HOLDINGS, LLC, | **(Re: Docket No. 50)** |
| Defendant. | |

Beginning in 2009, Plaintiffs Karisa Nguyen, Andre Vandenberg and Pearline Blackwood all bought triangular "Popcorners" chips made and sold by Defendant Medora Holdings, LLC. The chip packaging bore labels touting the chips as "all natural."[1] In 2013, lawyers for Plaintiffs sent Medora letters questioning the truth of the labeling and threatening a lawsuit. Soon thereafter, Medora decided to implement new packaging that omitted the offending "all natural" language.

Plaintiffs filed suit anyway, alleging that because the products contain genetically-modified organisms the labels were false and misleading. Like the majority of consumers, allege Plaintiffs,

---

[1] *See* Docket No. 47 at ¶¶ 1, 3.

1
Case No. 5:14-cv-00618-PSG
ORDER DENYING MOTION FOR CLASS CERTIFICATION

they expect "natural" foods to be free of GMOs.[2] They now move for certification of a class and various subclasses pursuant to Fed. R. Civ. P. 23(b)(2) and 23(c)(4).

Before considering the usual issues of ascertainability, typicality and predominance of damages necessary for the class certification Plaintiffs seek, the court must consider Plaintiffs' Article III standing. Because Plaintiffs offer no evidence to support their alleged injury-in-fact, they lack standing under Article III to pursue any relief. They additionally lack standing to pursue injunctive relief because Plaintiffs offer no evidence of a likelihood of injury in the future, and even if they did, the Popcorners label no longer includes the offending "all natural" language.

The court DENIES Plaintiffs' motion.

**I.**

"In a class action, standing is satisfied if at least one named plaintiff meets the requirements."[3] Not only must at least one named plaintiff satisfy constitutional standing requirements, but the plaintiff "bears the burden of showing that he has standing for each type of relief sought."[4] Article III standing to sue requires a plaintiff show "(1) an injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury is redressable by a favorable

---

[2] *Id.* at ¶¶ 18, 22, 26. Plaintiffs explain that "GMOs have created controversy around the world due to concerns about food safety, the effect on natural ecosystems, gene flow (a/k/a "gene migration" or "genetic drift") into non-GMO crops, and other issues. Natural breeding techniques cannot add the genes of a different organism—*e.g.*, adding fish genes to wheat plants. Instead, to add genes of an organism to a different organism, scientists must use genetic engineering, producing an organism that could not otherwise exist in nature."

[3] *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citing *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001)).

[4] *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

2
Case No. 5:14-cv-00618-PSG
ORDER DENYING MOTION FOR CLASS CERTIFICATION

ruling."[5] A plaintiff seeking equitable relief such as an injunction must further demonstrate a likelihood of future injury.[6] This requires a showing that the plaintiff is "realistically threatened by a repetition of the violation."[7] Allegations that a defendant's continuing conduct subjects unnamed class members to the alleged harm are insufficient if the named plaintiffs are themselves unable to demonstrate a likelihood of future injury.[8]

Medora developed and first marketed a domestic corn-based triangular snack chip named Popcorners in April 2010.[9] Apart from limited direct sales online, Medora has sold Popcorners for resale through wholesalers and distributors.[10] Medora's annual net sales for Popcorners increased from less than $450,000 in 2010[11] to less than $6 million in 2011, $15 million in 2012, and $26 million in 2013.[12] In late July, 2013, a lawyer for Plaintiffs sent Medora a letter quoting the California Consumers Legal Remedies Act,[13] demanding that Medora cease using the words "all

---

[5] *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1128 (N.D. Cal. 2014) (citing *Monsanto Co. v. Geertson Seed Farms*, 130 S.Ct. 2743, 2752 (2010)).

[6] *See Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 626 (N.D. Cal. 2011) (citing *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1039 (9th Cir. 1999). *See also Clark v. City of Lakewood*, 259 F.3d 996, 1006-07 (9th Cir. 2001), *as amended* (Aug. 15, 2001) (citing *Friends of the Earth Inc. v. Laidlaw Env. Servs. (TOC), Inc.*, 528 U.S. 167, 191-91 (2000); *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)).

[7] *See Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (quoting *Armstrong*, 275 F.3d at 860-61).

[8] *See Hodgers-Durgin*, 199 F.3d at 1044-45. *See also Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1114 (2013).

[9] *See* Docket No. 65-2 at ¶ 12.

[10] *See id.*

[11] *See id.* at ¶ 5.

[12] *See id.*

[13] *See* Cal. Civ. Code § 1750 *et seq.*

3
Case No. 5:14-cv-00618-PSG
ORDER DENYING MOTION FOR CLASS CERTIFICATION

natural" on its packaging and website, and threatening to file a class action suit.[14] In late October, 2013, another lawyer for Plaintiffs sent a draft complaint along with a settlement demand, similarly demanding that Medora cease using the words "all natural" on its Popcorners packaging.[15] While Medora denies there is anything misleading about its old labeling, in October and November 2013, Medora decided to implement a new label that did not include the words "all natural."[16] The new label went into effect in December 2013.[17] In 2014, annual net sales for Popcorners increased again, to approximately $34 million.[18]

In February 2014, Nguyen filed an initial complaint in this district. Vandenberg followed later that year with a complaint in the Southern District of Florida. Vandenberg's action was transferred here, and ultimately related and consolidated with Nguyen's.[19] Blackwood joined the case earlier this year by way of the operative amended class action complaint.[20] The operative complaint includes a variety of claims, including: violation of the California Consumers Legal Remedies Act, Civ. Code § 1750 et seq.; violation of the California Unfair Competition Law, Bus. & Prof. Code § 17200 et seq.—Unlawful Business Acts and Practices; violation of the California Unfair Competition Law, Bus. & Prof. Code § 17200 et seq.—Fraudulent Business Acts and

---

[14] *See* Docket No. 65-2 at ¶ 9. Each variety of Popcorners popped corn chips was sold with a label on the front of the bag that states prominently "all natural." The back of the Popcorners bags also featured the following representation: "Popcorners are the *delicious* new snack with the snap of a chip and the same wholesome goodness as popcorn. They're *air popped* with real corn and *all natural ingredients* so you can snack smart." Medora also made its "all natural" claims on social media sites such as Facebook. *See* Docket No. 47 at ¶¶ 33, 34.

[15] *See* Docket No. 65-2 at ¶ 9.

[16] *See id.* at ¶¶ 6, 10.

[17] *See id.* at ¶ 10.

[18] *See* Docket No. 65-2 at ¶ 7.

[19] *See* Docket Nos. 30, 62.

[20] *See* Docket No. 47.

4
Case No. 5:14-cv-00618-PSG
ORDER DENYING MOTION FOR CLASS CERTIFICATION

Practices; violation of the California False Advertising Law, Bus. & Prof. Code § 17500 et seq.; breach of express warranty; breach of the implied warranty of merchantability; violation of the New York General Business Law Section 349; violations of the Florida Deceptive and Unfair Trade Practices Act, negligent misrepresentation and violation of the California Magnusson-Moss Warranty Act.[21]

Discovery commenced. Nguyen testified in deposition that she bought a few bags of Popcorners in California in 2013.[22] In making her purchase, Nguyen says she relied upon the statement that the product was "all natural." Put another way, Nguyen says that had she known at the time that the product was not, in fact, "all natural" but was, instead, made with GMOs, she would not have purchased the product. Nguyen also says that if she knew that the product labels were truthful and not misleading, she would continue to purchase the products in the future. But Nguyen did not know the price she paid for the Popcorners she bought, and has no record of her

---

[21] The statutes in Florida and New York relied upon by Plaintiffs are similar to those in California. *See* Fla. Stat. § 501.201 ("[U]nfair or deceptive acts or practices in the conduct of any business, trade, or commerce are hereby declared unlawful."); N.Y. Gen. Bus. Law § 349(a) (2012) ("Deceptive acts or practices in the conduct of any business, trade, or commerce . . . are hereby declared unlawful."); California's CLRA, Civ. Code § 1750 making unfair and deceptive acts and practices unlawful; California's UCL, Bus. & Prof. Code § 17200 making unfair competition unlawful by violating the CLRA as being deceptive and misleading; California's FAL, Bus. & Prof. Code § 17500 making false and misleading claims unlawful. California, Florida and New York each rely on objective standards to determine whether a representation is deceptive, based on whether the representation would have caused a reasonable consumer to act differently. *See, e.g.*, *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 568 (S.D.N.Y. 2014); *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 703 (Fla. Dist. Ct. App. 2000). Neither New York nor Florida requires proof that a consumer actually relied on a defendant's deceptive representations. *See Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 676 (N.Y. 2012); *Latman*, 758 So. 2d at 703. Likewise, liability pursuant to California's UCL, FAL and CLRA all require a determination of whether the reasonable consumer is likely to be deceived, not whether any individual actually was deceived.

[22] Docket No. 65-1, at ¶ 4; Docket No. 65-1, Ex. 1, Nguyen Depo. at 60:13-61:4.

5
Case No. 5:14-cv-00618-PSG
ORDER DENYING MOTION FOR CLASS CERTIFICATION

purchases.[23] Nguyen also testified that she suffered no financial harm as a result of her purchases.[24]

Vandenberg bought one bag of Popcorners in 2013, and has no record of that purchase.[25] He says he bought the bag from a Whole Foods Market in Florida for approximately $2.99. The bag he purchased was labeled "all natural" on the front packaging, which he says he perceived, read and relied on in making his purchase. Vandenberg interpreted the "all natural" claim to mean that the White Cheddar Popcorners All Natural Corn Chips did not contain unnatural, synthetic, and/or artificial ingredients. He testified that he is now aware that most corn is genetically modified, but that he continues to eat corn-based foods that are probably genetically modified, regardless of whether they contain genetically modified ingredients.[26]

Blackwood testified that the first time she tried Popcorners, she was on a flight and selected a free snack from an attendant without reading the label.[27] She testified that she continued to purchase Popcorners during most of 2014, well after the label change removed the words "all natural" from Popcorners packaging.[28]

In the operative complaint, Plaintiffs request declaratory relief, injunctive relief and damages generally.[29] But they seek to certify a class only as to declaratory and injunctive relief

---

[23] *See id.* at 24:9-23.

[24] *See id.* at 82:22-24.

[25] *See* Docket No. 65-1 at ¶ 5; Docket No. 65-1, Ex. 2, Vandenberg Depo. at 28:1-6, 28:14-16, 29:3-5.

[26] *See id.* at 16:23-17:4, 38:7-12, 44:15-22.

[27] *See* Docket No. 65-1 at ¶6; *See* Docket No. 65-1, Ex. 3, Blackwood Depo., 19:19-21:23.

[28] *See id.* at 53:20-54:8.

[29] *See* Docket No. 47 at ¶ 160. Under the California consumer protection statute causes of action, counts one through four, Plaintiffs only seek damages.

6
Case No. 5:14-cv-00618-PSG
ORDER DENYING MOTION FOR CLASS CERTIFICATION

under Rules 23(b)(2) and 23(c)(4) for liability purposes specifically, leaving damages for later.[30] Plaintiffs also seek alternative state subclasses consisting of California, Florida and New York residents.[31]

## II.

This court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005 and under 28 U.S.C. § 1332(d), which explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant, and the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs. Plaintiffs alleges there are at least 100 members in the proposed class, the total claims of the proposed class members are well in excess of $5,000,000 in the aggregate, exclusive of interest and costs and a member of the proposed class is a citizen of a state different from the state of citizenship of Medora. The parties further consented to the jurisdiction of the undersigned under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[32]

---

[30] *See* Docket No. 50 at 4. Rule 23, which governs class certification, has two sets of distinct requirements Plaintiffs must meet before the court may certify a class. Plaintiffs must meet all of the requirements of Rule 23(a) and satisfy at least one of the prongs of Rule 23(b). Under Rule 23(a), the court may certify a class only where (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class and (4) the representative parties will fairly and adequately protect the interests of the class. Courts have implied an additional requirement under Rule 23(a): the class must be ascertainable. *See, e.g.*, *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 671-72 (N.D. Cal. 2011).

In addition to meeting the requirements of Rule 23(a), Plaintiffs must also satisfy "through evidentiary proof" one of the three subsections of Rule 23(b). The court can certify a Rule 23(b)(2) class if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Pursuant to Fed. R. Civ. P. 23(c)(4), "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues."

[31] *See* Docket No. 51-4 at 2-3.

[32] *See* Docket Nos. 10, 27, 30, 59, 88; Case No. 14-cv-0492-PSG at Docket Nos. 32, 34.

7
Case No. 5:14-cv-00618-PSG
ORDER DENYING MOTION FOR CLASS CERTIFICATION

Ordinarily, questions of standing are raised by way of a motion to dismiss for lack of subject matter jurisdiction.[33] Here, rather than filing any Rule 12 motion, Medora simply answered. But a court is always obligated to consider whether any plaintiff has standing to pursue the relief sought. "Standing is a threshold matter central to our subject matter jurisdiction. We must assure ourselves that the constitutional standing requirements are satisfied before proceeding to the merits."[34] Although presented as part of Medora's opposition to class certification, the court must therefore consider Plaintiffs' standing to pursue their proposed class-wide injunctive relief before anything else.[35] Upon such consideration, the court finds that not only has no named Plaintiff offered any proof of any injury-in-fact, no named Plaintiff is realistically threatened by a repetition of the violation.

### III.

"[P]rior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim."[36] "The standing formulation for a plaintiff seeking prospective injunctive relief is simply one implementation of *Lujan*'s requirements. The plaintiff must demonstrate that he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with 'a sufficient likelihood that he will again be

---

[33] *See, e.g.*, *Perez v. Nidek Co.*, 711 F.3d 1109, 1113-14 (9th Cir. 2013); *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1014-15 (9th Cir. 2010); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

[34] *Bates*, 511 F.3d at 985 (citing *United States v. Hays,* 515 U.S. 737, 742 (1995); *Casey v. Lewis,* 4 F.3d 1516, 1524 (9th Cir. 1993)).

[35] *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011) ("In a class action, the plaintiff class bears the burden of showing that Article III standing exists.").

[36] *In re Abbott Labs. Norvir Anti-Trust Litig.,* Case No. 04-cv-1511-CW, 2007 WL 1689899, at *2 (N.D. Cal. June 11, 2007) (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Georgia,* 247 F.3d 1262, 1287–88 (11th Cir. 2001)).

8
Case No. 5:14-cv-00618-PSG
ORDER DENYING MOTION FOR CLASS CERTIFICATION

wronged in a similar way.' As to the second inquiry, he must establish a 'real and immediate threat of repeated injury.'"[37] Between their failure to show any past injury, Plaintiffs' failure to express any intent to buy Popcorners in the future, and Medora's change to the label in late 2013, no named Plaintiff meets these basic requirements.

*First*, no named Plaintiff offers any proof of any past injury. In food-labeling cases such as this one, a plaintiff can satisfy the Article III injury-in-fact requirement by showing that she either: (1) paid a price premium for a mislabeled product; or (2) would not have purchased the product had he or she known about the misbranding.[38] Critically, at this stage, allegations alone are not enough. "[A]t the class certification stage, . . . unlike on a motion to dismiss, the would-be class

---

[37] *Bates*, 511 F.3d at 985-86 (citing *Lujan,* 504 U.S. at 560; *Lyons,* 461 U.S. at 111; *O'Shea v. Littleton,* 414 U.S. 488, 496 (1974)). *See also Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) ("[T]o establish standing to pursue injunctive relief, . . . [plaintiff] must demonstrate a 'real and immediate threat of repeated injury' in the future.").

[38] *See, e.g., Kane*, 973 F. Supp. 2d at 1128 ("Article III's standing requirements may be satisfied by allegations that a plaintiff purchased a product he otherwise would not have purchased, or spent more on such product, in reliance on the defendant's misrepresentations."); *see also Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 962 (N. D. Cal. 2013) (holding that "Brazil suffered a concrete and particularized injury . . . [because] he allegedly was deceived, and then paid money that he would not otherwise have paid had he known about the true nature of Defendants' products"); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 518, 595 (9th Cir. 2012) ("Plaintiffs contend that class members paid more for the CMBS than they otherwise would have paid, or bought it when they otherwise would not have done so, because Honda made deceptive claims. . . . To the extent that class members were relieved of their money by Honda's deceptive conduct—as Plaintiffs allege—they have suffered an 'injury in fact.'"); *Manchouck v. Mondelez Int'l Inc.*, Case No. 13-cv-2148-WHA, 2013 WL 5400285, at *2 (N. D. Cal. Sept. 26, 2013) (finding plaintiff had both standing where the complaint alleged "plaintiff paid a 'price premium' because the product claimed to be 'made with real fruit,'" and that "[p]laintiff would not have purchased the two products at that price point absent the alleged misstatements"); *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 329 (2011) ("For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately."); *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 901 (N.D. Cal. 2012) (holding "that plaintiffs would not have purchased a product if the product had been labeled accurately [was] sufficient to establish injury under California's consumer laws").

9
Case No. 5:14-cv-00618-PSG
ORDER DENYING MOTION FOR CLASS CERTIFICATION

representative must show standing, rather than merely allege it."[39]  Because the elements of Article III standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."[40]  On a motion for class certification, this means a plaintiff must show standing "through evidentiary proof."[41]

Here, Plaintiffs *allege* both they paid Medora a price premium[42] and that they were misled into buying Popcorners.[43]  But Plaintiffs make no such *showing* for either theory anywhere in their motion, reply or supplemental brief.  In fact, they cite no evidence on this issue whatsoever.[44]  Nor

---

[39] *In re First Am. Corp. ERISA Litig.,* Case No. 07-cv-1357-JVS, 2009 WL 928294, at *2 (C.D. Cal. Apr. 2, 2009).

[40] *Lujan*, 504 U.S. at 561; *see also In re iPhone Application Litig.*, Case No. 11-md-2250-LHK, 2013 WL 6212591, at *6 (N.D. Cal. Nov. 25, 2013); *Quinn*, 620 F.3d at 1014-15 ("If, as [plaintiff] argues, *Lujan*'s standard applies, it directs that Quinn could 'no longer rest on . . . mere allegations,' and at a bare minimum had to 'set forth by affidavit or other evidence specified facts' demonstrating that he met the requirements for derivative standing."); *Hodgers-Durgin v. de la Vina*, 165 F.3d 667 F.3d 667, 672 (9th Cir.), *opinion withdrawn on grant of reh'g*, 175 F.3d 761 (9th Cir. 1999) and *on reh'g*, 199 F.3d 1037 (9th Cir. 1999) ("At the summary judgment stage, we affirm only if Plaintiffs have not adduced any evidence from which they may be able to establish standing"—citing *Lujan*—and affirming finding of lack of standing and denial of class certification on rehearing).

[41] *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013); *see also Evans v. Linden Research, Inc.*, Case No. 11-cv-1078-DMR, 2012 WL 5877579, at *6 (N. D. Cal. Nov. 20, 2012) (holding that at class certification, "Plaintiffs must demonstrate, not merely allege, that they have suffered an injury-in-fact to establish Article III standing to bring the claims asserted on behalf of the [class]."); *Nelsen v. King Cnty.*, 895 F.2d 1248, 1249-50 (9th Cir. 1990) ("Standing is a jurisdictional element that must be satisfied prior to class certification."); *Mazza*, 666 F.3d at 588 (holding "[t]he party seeking class certification has the burden of affirmatively demonstrating that the class meets the requirements of Federal Rule of Civil Procedure 23" and vacating and remanding certification of class after *Wal-Mart*) (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2001)).

[42] *See* Docket No. 47 at ¶¶ 6, 44, 57, 116.

[43] *See id.* at ¶¶ 16-28.

[44] *See* Docket Nos. 50, 66, 75.

United States District Court
For the Northern District of California

do Plaintiffs dispute evidence and deposition testimony that sales of Popcorners actually increased when the "all natural" label was removed[45] and that Plaintiffs specifically admitted that they have not avoided foods that they know contain GMOs.[46]  Because Plaintiffs have made no showing that they paid a price premium or that they would not have purchased the product had they known about the alleged misbranding, Plaintiffs do not have Article III standing to pursue any relief.

---

[45] *See* Docket No. 65-2 at ¶¶ 7-8, 11; *cf. Rahman v. Mott's, LLP*, Case No. 13-cv-03482-SI, 2014 WL 685779, at *10, n.3 (N.D. Cal. Dec. 3, 2014) (denying certification under 23(b)(3) for lack of predominance when plaintiffs could not demonstrate what portion of the apple juice sale price was attributable to the "No Sugar Added" statement; denying certification under 23(b)(2) as moot for lack of standing).

[46] Nguyen testified that she has knowingly purchased foods containing GMOs and the reason why she did not buy Popcorners after buying them once was because she was not interested.  *See* Docket No. 65-1, Ex. 1, Nguyen Depo. at 60:13-61:5; 76:4-77:12, 82:22-24 ("[I]f I had a purpose for buying it, and I knew that it had GMOs, and I was already aware, going in, that it had GMOs, then I would, potentially, purchase it."  When asked why she had not purchased Popcorners again, Nguyen responded:  "I just have not been interested.  It wasn't something that . . . was memorable enough to me to purchase again.").  When asked if she was aware the labeling was changed, she said she was not.  *See id.* at 61:9-11.

Vandenberg testified that he knows that most domestic corn is genetically modified, and he regularly eats corn-based products even when he does not know whether they contain GMOs.  *See* Docket No. 65-1, Ex. 2, Vandenberg Depo. at 16:23-17:4, 30: 11-15, 38:7-12, 44:15-22 (admitting to typically eating chips at a Mexican restaurant, whether he knows if they are organic or nonorganic, and when he knows the majority of corn is "GMO'd").

Blackwood testified that she did not see any representations on the bag when she selected Popcorners but ate them anyway, that she frequently purchased Popcorners long after Medora removed the challenged label and that she consumes other foods knowing they might be genetically modified.  *See* Docket No. 65-1, Ex. 3, Blackwood Depo. at 19:19-21:23, 43:2-3, 53:20-54:8 ("Q. So somebody told you that you shouldn't eat Popcorners, and that was about September of last year, 2013? A. '14. Q. Oh, 2014? A. Last year. Q. Okay.  Well, the bags didn't have 'all natural' on them last year.  The labeling changed in 2013.  A. Right.  But I'm not checking the labels every year to see what's on it.  I buy Popcorners.  First time I bought it, I know it said 'all natural' and I'm always eating it.").

Plaintiffs suggest that their subsequent willingness to purchase GMO products only goes to the materiality of the alleged misrepresentations and does not deprive of Article III standing, citing *Sethavanish v. ZonePerfect Nutrition Co.*, Case No. 12-cv-2907-SC, 2014 WL 580696, at *6 (N.D. Cal. Feb. 13, 2014) and *Werdebaugh v. Blue Diamond Growers*, Case No. 12-cv-2724-LHK, 2014 WL 2191901, at *16 (N.D. Cal. May 23, 2014).  But unlike in *Sethavanish* and *Werdebaugh*, here Plaintiffs cite no evidence even suggesting that would not have bought Popcorners had they not equated "all natural" with "non-GMO."

11
Case No. 5:14-cv-00618-PSG
ORDER DENYING MOTION FOR CLASS CERTIFICATION

***Second***, even if Plaintiffs could show they suffered an injury-in-fact, they fail to show that any injury is "redressable by a favorable ruling" that would permit a class under Rule 23(b)(2).[47] To establish standing for prospective injunctive relief, a plaintiff must demonstrate that "he has suffered or is threatened with a 'concrete and particularized' legal harm . . . coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'"[48] The alleged threat cannot be "conjectural" or "hypothetical."[49] "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."[50] Each plaintiff must show that she herself is subject to a likelihood of future injury.[51]

While a few courts in this circuit have held, on public policy grounds, that standing does not require a plaintiff even to allege an intent to purchase the mislabeled product in the future,[52] many others, particularly in this district, have held the opposite: "to establish standing, [a plaintiff]

---

[47] *Kane*, 973 F. Supp. 2d at 1128 (citing *Monsanto*, 130 S.Ct. at 2752). Plaintiffs contend that they need an "[o]rder prohibiting Defendant from falsely and misleadingly labeling Popcorners as 'All Natural' despite the presence of GMOs (or to reformulate the products to remove GMOs)." Docket No. 51-4 at 13.

[48] *Bates*, 511 F.3d at 985 (quoting *Lyons*, 461 U.S. at 111); *see also Chapman*, 631 F.3d at 946.

[49] *Lyons*, 461 U.S. at 101-02.

[50] *O'Shea*, 414 U.S. at 495-96.

[51] *See Hodgers-Durgin*, 199 F.3d at 1045-45.

[52] *See, e.g. Henderson v. Gruma Corp.*, Case No. 10-cv-04173-AHM, 2011 WL 1362188, at *8 (C.D. Cal. Apr. 11, 2011) ("While Plaintiffs may not purchase the same Gruma products as they purchased during the class period, because they are now aware of the true content of the products, to prevent them from bringing suit on behalf of a class in federal court would surely thwart the objective of California's consumer protection laws."); *cf. Belfiore v. Procter & Gamble Co.*, Case No. 14-cv-4090-JBW, 2015 WL 1402313, at *2 (E.D.N.Y. Mar. 25, 2015) ("Federal courts 'have held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer,' because to 'hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief.'").

must allege that he intends to purchase the products at issue in the future."[53]  Still others have gone further, holding that a plaintiff's knowledge of the allegedly misleading label renders any expressed intent to purchase the challenged product in the future "implausible."[54] The reasoning of these latter courts is the more persuasive.  The court gives Plaintiffs more credit than to understand that they are at risk of being duped again by a label they now understand does not indicate a lack of

---

[53] *Rahman v. Mott's LLP*, Case No. 13-cv-3482-SI, 2014 WL 325241, at *10 (N. D. Cal. Jan. 29, 2014); *see also Jou v. Kimberly-Clark Corp.*, Case No. 13-cv-3075-JSC, 2013 WL 6491158, at *13 (N. D. Cal. Dec. 10, 2013) (rejecting "Plaintiffs' contention that it is unnecessary for them to maintain any interest in purchasing the products in the future" in order to establish standing for injunctive relief); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533-34 (N. D. Cal. 2012) (finding plaintiffs had standing to pursue injunctive relief where they alleged intention to purchase products in the future); *Delarosa v. Boiron, Inc.*, Case No. 10-cv-1569-JST, 2012 WL 8716658, at *3-6 (N. D. Cal. Dec. 28, 2012) (finding plaintiff lacked standing where she did not dispute she had no intention to purchase product in the future); *Wang*, 276 F.R.D. 618, 626.

[54] *Morgan v. Wallaby Yogurt Co.*, Case No. 13-CV-00296-WHO, 2014 WL 1017879, at *6 (N.D. Cal. Mar. 13, 2014) ("Here, I am limited to only granting damages since the plaintiffs now know what evaporated cane juice is and have unambiguously stated that they would not have purchased the product had they known it contained added sugar.  They cannot plausibly allege that they would purchase the challenged products in the future if they were properly labeled.").  *See also Garrison v. Whole Foods Mkt. Grp., Inc.*, Case No. 13-cv-05222-VC, 2014 WL 2451290, at * 5 (N.D. Cal. June 2, 2014) ("The named plaintiffs in this case allege that had they known the Whole Foods products they purchased contained SAPP, they would not have purchased them.  Now they know.  There is therefore no danger that they will be misled in the future."); *Ham v. Hain Celestial Grp., Inc.,* Case No. 14-cv-02044-WHO, 2014 WL 4965959, at * 6 (N.D. Cal. Oct. 3, 2014) (finding the plaintiff did not have standing for injunctive relief "[b]ecause [plaintiff] is now aware that the products use SAPP, she cannot allege that she would be fraudulently induced to purchase the products in the future."); *Algarin v. Maybelline, LLC,* 300 F.R.D. 444, 458 (S.D. Cal. 2014) ("These consumers will not benefit from the injunctive relief as they cannot demonstrate a probability of future injury; if they know the 'truth' they cannot be further deceived.").

13
Case No. 5:14-cv-00618-PSG
ORDER DENYING MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

GMO ingredients.[55]  And no matter their wisdom or fairness, courts and legislatures don't get to create exceptions to Article III.[56]

***Third***, even if Plaintiffs did offer evidence of injury-in-fact and redressability, they still lack standing to pursue injunctive relief because Medora changed the packaging back in December 2013, before this suit was even filed.  In support of their claims of an ongoing risk despite the change, Plaintiffs point to a web archive screen shot showing an image of the old packaging on the Medora website in March 2014.[57]  But Plaintiffs present no evidence that they ever visited the Medora website or made any direct purchases.  And beginning in May 2014, after Nguyen filed her complaint but before Vandenberg or Blackwood became plaintiffs, Medora changed the online Popcorners images to reflect the new packaging without the "all natural" label.[58]  There is no precedent for a case going forward with a Rule 23(b)(2) under such circumstances.[59]

---

[55] Nguyen has explicitly disclaimed any such risk.  In her deposition she testified without qualification that she is not even interested in any future purchase of the product.  *See* Docket No. 65-1, Ex. 1, Nguyen Depo. at 61:9-11.  *See, e.g.*, *Backhaut v. Apple, Inc.*, Case No. 14-cv-02285-LHK, Docket No. 89 at 13-16 (N.D. Cal. Aug. 13, 2015) (finding plaintiffs seeking class certification had no standing to bring claims for injunctive relief because plaintiffs' problems with iMessage were resolved or plaintiffs vowed not to use iMessage again, and any risk of repeated future harm was too speculative).

[56] *See Garrison*, 2014 WL 2451290, at * 5 ("[T]he power of the federal courts is limited, and that power does not expand to accommodate the policy objectives underlying state law.").

[57] *See* Docket No. 79-1.

[58] *See* Docket Nos. 84-2; 84-3, Ex. 1.

[59] In fact, only recently, one court specifically denied class certification under such circumstances.  *See Ault v. J.M. Smucker Co.*, Case No. 13-cv-3409-PAC, 2015 WL 4692454, at *9 (S.D.N.Y. Aug. 6, 2015) ("Plaintiff has not demonstrated that such relief is necessary.  Defendant has already removed the "All Natural" label from three of the four challenged products; it is in the process of removing the "All Natural" label from the fourth.  Moreover, Defendant has submitted a sworn declaration that it "has no plans to re-introduce the 'all natural' claim on the Crisco Oil labels at any point in the future.") (citing *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 408 (S.D.N.Y. 2015) ("[I]t appears the 50% thicker claim has already been removed from EZ Seed's packaging, and it is not clear what additional injunctive relief plaintiffs seek.  Thus, certification of a 23(b)(2) class does not appear necessary.")).  The cases cited by Plaintiffs are inapposite; each involved enjoining historical civil rights violations or environmentally dangerous practices.  *See Friends of the Earth*,

14
Case No. 5:14-cv-00618-PSG
ORDER DENYING MOTION FOR CLASS CERTIFICATION

To be sure, past wrongs can be "evidence bearing on whether there is a real and immediate threat of repeated injury,' even if they 'do not in themselves amount to real and immediate threat of injury necessary to make out a case or controversy.'"[60] But in seeking to enjoin allegedly illegal conduct that defendant has voluntarily discontinued, the moving party must satisfy the court that relief is needed because "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive."[61]  Plaintiffs show no evidence and point to nothing to suggest there is any "threat" that Medora will change its label back to include an "all natural" statement, or that an injunction issued by the court would have any impact on any consumers, let alone Plaintiffs personally.  While Medora may have marketed and sold some units of Popcorners with the "all natural" label after Nguyen filed her complaint,[62] Medora's Chief Financial Officer testified that though the "all natural" label was removed "because of this lawsuit,"[63] the "all natural" claim had no discernable impact on sales, which increased after the

---

528 U.S. at 189; *Allee v. Medrano*, 416 U.S. 802, 811 (1974), *superseded by statute on other grounds*; *N.Y. State NOW v. Terry*, 159 F.3d 86, 91-92 (2d Cir. 1998); *Gulino v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, 907 F. Supp. 2d 492, 509  (S.D.N.Y. 2012); *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *Etuk v. Slattery*, 936 F.2d 1433, 1441 (2d Cir. 1991); *N.Y. Cmtys. For Change v. N.Y. City Dep't of Educ.*, Case No. 11-cv-3494-SJ, 2012 WL 7807955, at *39-40 (E.D.N.Y. Aug. 29, 2012).

[60] *Ries*, 287 F.R.D. at 533 (citing *O'Shea*, 414 U.S. at 496; *Lyons*, 461 U.S. at 103); *see also Jones v. Conagra Foods, Inc.*, Case No. 12-cv-1633-CRB, 2014 WL 2702726, at *12 (N.D. Cal. June 13, 2014).

[61] *W.T. Grant Co.*, 345 U.S. at 633; *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003).

[62] *See* Docket No. 79 at 1-3 ("Mr. Ruppel testified that new film (packaging) was ordered and delivered in December 2013 and that the company used 'most of' the old film by the end of 2013. . . . 'Q. And by perhaps January 2014 all the new packaging was on the shelves?  A. It was at least—we were producing bags without the all natural on it in January 2014 and actually some of the bags were started in December of '13.  But we just picked January as I mean, we couldn't pick an exact date.  And not all bags changed, you know, December 2013.  So January 1, 2014 was the day that we said we're not using the bag with all natural on them.  Did we produce them?  Probably.  But we produced some without the all natural in December so it's kind of a wash.'") (citing Docket No. 79-3, Ex. B, 26:16-24; 102:16-104:2).

[63] Docket No. 51-4, Ex. F, Ruppel Depo. at 26:13-25, 105:14-17.

15
Case No. 5:14-cv-00618-PSG
ORDER DENYING MOTION FOR CLASS CERTIFICATION

label change.[64]  With such evidence in the record unrebutted, Plaintiffs fail to show any need for an injunction to preserve the status quo.

Plaintiffs finally urge that "corrective advertising is appropriate . . . [and] should be oriented toward eliminating the false nature of the offending ad as well as the confusion it engenders in the minds of consumers."[65]  Corrective advertising is only appropriate if plaintiffs have lost a significant market share or experienced a competitive disadvantage.[66]  Because Plaintiffs here are consumers, not competitors vying for market share, the corrective advertising theory is inapplicable.[67]

## IV.

Plaintiffs' motion for class certification is DENIED.  Because named Plaintiffs lack Article III standing, the parties shall address this court's overarching subject matter jurisdiction at the status hearing set for August 25, 2015.[68]

**SO ORDERED.**

Dated:  August 18, 2015

PAUL S. GREWAL
United States Magistrate Judge

---

[64] *See* Docket No. 65-2 at ¶¶ 7, 8.

[65] *See* Docket No. 50 at 17.

[66] *See Merck Eprova AG v. Gnosis S.P.A.*, Case No. 07-cv-5898-RJS, 2013 WL 1385208, at *1 (S.D.N.Y. Mar. 7, 2013); *Linotype Co. v. Varityper, Inc.*, Case No. 89-cv-4747-MJL, 1989 WL 94338, at *3 (S.D.N.Y. Aug. 4, 1989); *Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.*, 348 F. Supp. 2d 165, 185 (S.D.N.Y. 2004).

[67] *See Ault*, 2015 WL 4692454, at *9.  Two of the five cases cited by Plaintiffs do not discuss corrective advertising at all.  *See Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 772 (2d Cir. 1984); *see also Nat'l Geographic Soc'y v. Conde Nast Publ.*, 687 F. Supp. 106 (S.D.N.Y. 1988).

[68] *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998).